STATE of Texas ex rel. John
B. HOLMES, Jr., District
Attorney, Relator,

v.

The HONORABLE COURT OF
APPEALS FOR the THIRD
DISTRICT, Respondent.

TEXAS BOARD OF PARDONS AND
PAROLES, et al., Relator,

v.

The HONORABLE COURT OF
APPEALS FOR the THIRD
DISTRICT, Respondent.

Nos. 71764, 71765.

Court of Criminal Appeals of Texas,
En Banc.

April 20, 1994.

Rehearing Denied June 8, 1994.

John B. Holmes, Jr., Dist. Atty., and Calvin A. Hartmann and Roe Wilson, Asst. Dist. Attys., Houston, Charles Palmer, Asst. Atty. Gen., Austin, for relators.

James C. Harrington, Austin, for real party in interest Gary Graham.

*OPINION ON RELATORS'
APPLICATION FOR WRIT
OF MANDAMUS*

BAIRD, Judge.

Relators, Harris County District Attorney John B. Holmes and the Texas Board of Pardons and Paroles by and through the Attorney General, seek a writ of mandamus and/or prohibition directing respondent, the Third Court of Appeals, to withdraw its order enjoining the execution of death row inmate Gary Graham. We will conditionally grant relief.

## I.

A recitation of the procedural history of this case is in order. Graham was convicted of capital murder in the 182nd District Court of Harris County. Tex.Penal Code Ann. § 19.03(a)(2). We affirmed. *Graham v. State,* 671 S.W.2d 529 (Tex.Cr.App.1984). We denied Graham's first application for writ of habeas corpus, *Ex parte Graham* (Tex.Cr. App. No. 17,568–01, delivered February 19, 1988) (not published), and Graham unsuccessfully petitioned the federal courts for relief. *Graham v. Collins,* 950 F.2d 1009 (5th Cir.1992) (en banc); *and, Graham v. Collins,* —— U.S. ——, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). Although we ultimately denied Graham's second writ application, we stayed his execution pending the resolution of *Johnson v. Texas,* —— U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). *Ex parte Graham,* 853 S.W.2d 564 (Tex.Cr.App.1993); *and, Ex parte Graham,* 853 S.W.2d 565 (Tex. Cr.App.1993). Our stay expired by its own terms and the Supreme Court denied certiorari. *Graham v. Texas,* —— U.S. ——, 113 S.Ct. 2431, 124 L.Ed.2d 651 (1993).

The Texas Board of Pardon and Paroles, hereafter the Board, denied Graham's first request for executive clemency and Governor Richards granted Graham a thirty day reprieve. Graham requested executive clemency a second time but the Board did not act on that request because of our aforementioned stay of Graham's execution. *Graham*, 853 S.W.2d at 567.

Upon expiration of our stay, the judge of the 182nd District Court ordered Graham's execution before sunrise on August 17, 1993. On July 21, 1993, Graham filed a civil suit in the 299th District Court of Travis County seeking an order compelling the Board to hold a hearing on his request for clemency. Graham contended art. I, §§ 13 and 19, and art. IV, § 11 of the Texas Constitution required a hearing. The judge of the 299th District Court agreed and entered a temporary injunction requiring the Board to hold a hearing on or before August 10, 1993, or to reschedule Graham's execution until such a hearing could be held.[1]

On August 10, 1993, the Board filed notice of appeal to respondent, Third Court of Appeals. On Graham's motion, respondent entered a writ of injunction enjoining relators from proceeding with the execution. Writ of Injunction, pg. 2. Respondent held the injunction was necessary to preserve its jurisdiction over the appeal.[2]

The Board filed a motion for leave to file original applications for writ of prohibition and mandamus in this Court requesting that we vacate the injunction, prohibit respondent from taking further action and address Graham's claims.[3] Relator Holmes filed a motion for leave to file petition for writ of mandamus and request for emergency stay requesting that we vacate respondent's injunction.[4] On August 16, 1993, we denied leave to file but, on our own motion, stayed Graham's execution. *State ex rel. Holmes v. Third Court of App.*, 860 S.W.2d 873 (Tex.Cr. App.1993).

On November 9, 1993, we re-considered each motion, granted leave to file and consol-

---

1. The temporary injunction specifically ordered:

    1. A hearing before an impartial officer;
    2. The right for [Graham's] attorneys to confront evidence and witnesses against him and to cross-examine them during such hearing.
    3. The right to present witnesses and evidence on [Graham's] behalf, and to have the Board issue subpoenas on [Graham's] behalf for witnesses and evidence at such hearing;
    4. The right to a written summary of the findings and decision of the hearing officer;
    5. The right to be represented by counsel during such hearing;
    6. The right to have the hearing transcribed by a court reporter; and,
    7. The right to adequately prepare for such a hearing.

    Temporary Injunction (signed August 9, 1993); *Graham v. Texas Board of Pardons & Paroles et al.*, No. 93–08624, pending in the 299th District Court of Travis County, Texas.

2. Respondent held:

    Clearly, to proceed with the execution as scheduled would affect the parties' rights pending the disposition of the appeal from the district-court order of injunction and would destroy the subject matter of the lawsuit. Because to do so would interfere with this Court's jurisdiction over the appeal, we grant the request for relief.

    Opinion on writ of injunction, Slip op., pg. 3.

3. Specifically, the Board asked this Court:

    ... to vacate the original injunction by the Third Court of Appeals staying Graham's execution; to prohibit the Third Court of Appeals from taking any further action in this cause because these proceedings are criminal matters in a capital case in which the death penalty has been assessed and thus not within the jurisdiction of the civil courts of Texas; to direct the Third Court of Appeals to dismiss the appeal upon notice that the district court has dismissed this cause for want of jurisdiction pursuant to the holding of this Court; and, to assume original habeas jurisdiction to address the issue raised by Graham that a death row inmate is constitutionally entitled to a hearing before the Board of Pardons and Paroles on a request for clemency when he claims actual innocence based upon evidence not introduced at trial.

    Petition for Writs of Prohibition and Mandamus, pg. 6.

4. Specifically, relator Holmes requests this Court to:

    ... issue a writ of mandamus directing Respondent to vacate its order of August 13, 1993, in Cause No. 3–93–421–CV, Texas ... Further, Relator requests that this Court issue said order granting mandamus relief without undue delay due to the exigency of the issues sub judice, and further requests that a temporary stay be issued by this [Court] in Cause No. 3–93–421–CV pursuant to Tex.R.App.Proc. 121(d).

    Petition for Writ of Mandamus, pg. 2.

idated the motions. The contentions before us are:

1. Whether respondent's order illegally vacates a previously existing order of a court of equal and competent jurisdiction thereby usurping that court's original jurisdictional authority over Graham's case;

2. Whether respondent's order violates the original jurisdiction of this Court under art. V, § 5 of the Texas Constitution;

3. Whether respondent had no jurisdiction to issue an injunction which is in effect a stay of Graham's execution;

4. Whether Graham has failed to present his complaint to the trial court by means of exclusive post conviction habeas corpus remedy set forth within Tex.Code Crim.Proc.Ann. art. 11.07; and,

5. Whether this Court should assume original habeas corpus jurisdiction over this case and respond to the issue raised by Graham.

We will address contentions one, two, and, three in part II of this opinion; contention

**5.** Art. V, § 5 provides in part:

> The Court of Criminal Appeals shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatever grade....
>
> The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals.
>
> \* \* \* \* \* \*
>
> Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments.
>
> Further, Tex.Code Crim. Proc.Ann. art. 4.04, the legislative enactment of art. V, § 5, provides:
> Sec. 1. The Court of Criminal Appeals and each judge thereof shall have, and is hereby given, the power and authority to grant and issue and cause the issuance of writs of habeas corpus and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The court and each judge thereof shall have, and is hereby given, the power and

four in parts III, IV, and V; and, contention five in part VI.

## II.

### A. Mandamus

▪ Our power to issue writs of mandamus is derived from art. V, § 5 of the Texas Constitution and Tex.Code Crim.Proc.Ann. art. 4.04.[5] Mandamus is an extraordinary remedy to be invoked sparingly. *State ex rel. Sutton v. Bage*, 822 S.W.2d 55, 57 (Tex. Cr.App.1992). To be entitled to a writ of mandamus, the relator must demonstrate: 1) the act sought to be compelled is purely ministerial (as opposed to discretionary); *and*, 2) the relator has no other adequate remedy. *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Cr.App.1991). *See, State ex rel. Holmes v. Salinas*, 784 S.W.2d 421 (Tex.Cr. App.1990); *Collins v. Kegans*, 802 S.W.2d 702 (Tex.Cr.App.1991); *and, Stearnes v. Clinton*, 780 S.W.2d 216 (Tex.Cr.App.1989).[6]

### B. Criminal Law Matter

▪ Our mandamus power is limited to "criminal law matters." Tex. Const. art. V, § 5. *See*, n. 5, *supra. See also, Dickens v.*

> authority to grant and issue and cause the issuance of such other writs as may be necessary to protect its jurisdiction or enforce its judgments.
> Sec. 2. The Court of Criminal Appeals shall have, and is hereby given, final appellate and review jurisdiction in criminal cases coextensive with the limits of the state, and its determinations shall be final. The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals. In addition, the Court of Criminal Appeals may, on its own motion, with or without a petition for discretionary review being filed by one of the parties, review any decision of a court of appeals in a criminal case. Discretionary review by the Court of Criminal Appeals is not a matter of right, but of sound judicial discretion.

**6.** We have also described the first prong as a clear right to the relief sought which is the functional equivalent of a ministerial act:

> ... [mandamus] is available only when the relator can establish two things: first, that under the relevant law and facts, he has a *clear* right to the relief sought, i.e., the act he seeks to compel is "ministerial"....
> *State ex rel. Sutton v. Bage*, 822 S.W.2d 55, 57 (Tex.Cr.App.1992).

*Court of Appeals*, 727 S.W.2d 542, 545 (Tex. Cr.App.1987). Therefore, the threshold issue is whether respondent's injunction is a criminal law matter.

While no rule precisely defines the limits of a criminal law matter, we enunciated a general rule in *Curry v. Wilson*, 853 S.W.2d 40 (Tex.Cr.App.1993). Curry was acquitted in his criminal trial. After the trial, Wilson, the trial judge, believing Curry was no longer indigent, sought to recoup the legal fees incurred by Tarrant County for Curry's representation. *See*, Tex.Code Crim.Proc.Ann. art. 26.05(e). Curry sought a writ of prohibition to prevent the recoupment. Wilson challenged our jurisdiction to hear the case, contending it was not a criminal law matter. *Id.*, at 43. We explained that criminal law matters are those:

> ... *Disputes which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure, and which arise as a result of or incident to a criminal prosecution....*[7]

*Id.* We noted respondent's authority to order recoupment arose from the Code of Criminal Procedure. *Id.* We further observed that the legal services were incurred in the course of Curry's criminal trial. *Id.* We concluded the "dispute [was] a criminal law matter and this Court [had] jurisdiction to hear the case and determine whether a writ of prohibition should issue." *Id.*

Similarly, in *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581 (Tex.Cr.App. 1993), we considered whether a former judge may preside at a criminal trial over the State's objection. Lanford, who had resigned as a district judge, was assigned to sit as a visiting "former judge." Tex.Gov't Code Ann. § 74.054. *Lanford*, 847 S.W.2d at 583. The State's objection to Lanford's assignment was overruled. *Id.* The State then sought and received a writ of mandamus from the Fourteenth Court of Appeals ordering Lanford to not preside in a criminal case over the State's objection. *Id.* Lanford sought a writ of mandamus from this Court ordering the Court of Appeals to rescind its writ of mandamus. *Id.*, at 584. The State contended we lacked jurisdiction to decide

the matter because "[t]he orderly assignment of judges [was] a concern which [was] peculiarly within the province of the Texas Supreme Court," i.e., a civil law matter. *Id.*

In addressing the jurisdiction issue, we noted that the primary goal in interpreting constitutional provisions was to "ascertain and give effect to the *apparent intent of the voters who adopted it.*" *Lanford*, 847 S.W.2d at 585 (citing *Edgewood I.S.D. v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989); *and, Williams v. Castleman*, 112 Tex. 193, 247 S.W. 263, 265 (1922)). We concluded:

> ... [the] average voters reading the phrase "criminal law matters" at the time of [art. V, § 5's] adoption would probably have interpreted it *to encompass, at a minimum, all legal issues arising directly out of a criminal prosecution.* Thus, we conclude without difficulty that the constitutional phrase "criminal law matters" does encompass, and this Court does have jurisdiction over, the issue presented in Lanford's application.

*Lanford*, 847 S.W.2d at 585.

Further, in *Smith v. Flack*, 728 S.W.2d 784 (Tex.Cr.App.1987), we considered whether the payment of attorney's fees was a criminal law matter. *See*, Tex.Code Crim.Proc.Ann. art. 26.05. The relators, four court-appointed criminal defense attorneys, sought a writ of mandamus to compel the Harris County Auditor and Commissioner's Court to pay attorneys' fees awarded by a trial judge. *Id.*, at 787–788. To determine whether we had jurisdiction to issue the writ, we observed: "[W]hen read as a whole, Article V, § 5 ... grants this Court the power to issue writs of mandamus *when a criminal law is the subject of the litigation.*" *Id.*, at 788. Concluding the litigation was grounded upon art. 26.05, we held the writ application directly involved a criminal law matter. *Id.*, 788–789. *See also, Collier v. Poe*, 732 S.W.2d 332, 334 (Tex.Cr.App.1987) (denial of motion for legislative continuance during criminal trial was a criminal law matter within Court's mandamus jurisdiction); *Dickens*, 727 S.W.2d 542 (criminal discovery law was a criminal law matter within Court's mandamus jurisdic-

---

**7.** All emphasis is supplied unless otherwise indicated.

tion); *and, Weiner v. Dial,* 653 S.W.2d 786, 787 (Tex.Cr.App.1983) (appointment and compensation of attorneys to represent criminal clients pursuant to art. 26.05 is a criminal law matter).

Moreover, a matter does not cease to be a criminal law matter simply because it may be necessary to address elements of civil law in resolving the matter. *See, Commissioners' Court v. Beall,* 98 Tex. 104, 81 S.W. 526, 528 (1904). *Compare, Ex parte Mode,* 77 Tex. Crim. 432, 180 S.W. 708 (1915) (statute providing for local elections for pool hall regulation held constitutional). Although civil and criminal law matters may occasionally overlap, when a matter is essentially criminal, the presence of civil law issues will not remove the matter from our jurisdiction. *Smith v. Flack,* 728 S.W.2d at 788–789. In *Smith,* we explained that our jurisdiction to determine incidental issues of civil law was necessary to the exercise of our mandamus power:

> ... Undoubtedly, the enforcement of an order issued pursuant to a criminal statute is a criminal law matter as much as the issuance of the order itself, *even if it requires this Court to examine civil laws in the process. Were it otherwise, this Court's power to decide criminal law matters would be seriously eroded or eliminated altogether by the incidental presence of civil law matters.*

*Id.*

■ Clearly, the entry of an order which stays the execution of a death row inmate is a criminal law matter. Art. V, § 5 specifically confers exclusive appellate jurisdiction of all cases in which the death penalty has been assessed in the Court of Criminal Appeals. A sentence of death may only be based upon a conviction for capital murder. Tex.Penal Code Ann. § 19.03. Further, the legislature has provided specific procedures relating to a capital trial and the execution of the death sentence. *See e.g.,* Tex.Code Crim.Proc.Ann. arts. 34.01, 35.13, 35.15, 37.071, 42.04, 43.14, 43.15, 43.16, 43.17, 43.18, 43.19, 43.20, 43.21, 43.22, 43.24, *and,* 43.25. Because the respondent's injunction "arises over the enforcement of statutes governed by the Texas Code of Criminal Procedure," and "arise[s] as a result of or incident to a criminal prosecu-

tion," we hold this issue is a criminal law matter properly before this Court. *See, Curry, supra; and,* art. V, § 5.

## C. Adequate Remedy

■ Graham contends relators have an adequate remedy through the normal appeals process. Relators contend this remedy is inadequate because the injunction was not a final judgment and, therefore, may not be immediately appealed. Further, relators contend the ultimate appeal of Graham's case would be to the Supreme Court, Tex. R.App.P. 130, which would make resolution of the issue impossible because the Supreme Court would lack jurisdiction to decide the issue if we determine the injunction to be a criminal law matter, *see,* part II(B), *supra; and, State v. Morales,* 869 S.W.2d 941 (1994).

In *Smith,* we held: "In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate." *Id.,* 728 S.W.2d at 792. As we stated in *Stearnes,* "[t]he remedy of appeal is simply inappropriate to the situation present[ed] here." *Id.,* 780 S.W.2d at 225. Relators' contentions address respondent's jurisdiction to enter its writ of injunction. Resolution of this issue through the normal appeals process would necessarily require relators to wait until final judgment is entered, and the appeals process would likely be through the civil courts. As previously noted, this Court has the ultimate jurisdiction over criminal law matters. *See,* Part II(B), *supra.* Consequently, we hold that, under the facts of this case, the normal appellate process would not provide relators an adequate remedy.

## D. Discretionary or Ministerial

Relators contend respondent had no jurisdiction to enjoin Graham's execution. Graham contends:

> [w]hile the trial court and [the Court of Criminal Appeals] certainly have the authority to stay Mr. Graham's execution, nothing in the statutes cited by Relators grants "exclusive" authority to either

court. Neither can they reasonably be read to limit the inherent authority of a Court of Appeals to enjoin parties before it from carrying out an execution when such action is necessary to the lawful exercise of jurisdiction over an appeal brought by state officials....

Response of Real Party in Interest to the State's Motion For Leave To File Petition For Writ of Mandamus and/or Writ of Prohibition, pp. 13–14.[8]

At the time the indictment against Graham was filed in the 182nd District Court, "that court obtained sole jurisdiction over the case to exclusion of all other courts." *State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 480 (Tex. Cr.App.1985). Graham was convicted of capital murder and was sentenced to death. Appeal to this Court was automatic, Tex.Code Crim.Proc.Ann. art. 37.071(h), and we affirmed. *Graham*, 671 S.W.2d at 529. On December 10, 1984, our mandate issued. Pursuant to our mandate, the judge of the 182nd District Court ordered Graham's execution. The effect of respondent's injunction was to circumvent our decision and disobey our mandate.[9]

In *State ex rel. Wilson v. Briggs*, 171 Tex. Crim. 479, 351 S.W.2d 892 (1961), Judge Cullen Briggs, judge of the 117th District Court in Nueces County, stayed the execution of Howard Stickney, an inmate convicted in Harris County of capital murder and sentenced to death. Briggs held a hearing on Stickney's application for writ of habeas corpus and stayed the execution. We set aside the stay and denied the application. *Id.*, 351 S.W.2d at 893. The trial judge again set Stickney's execution. However, the execution was stayed by yet another district judge. *Id.* The trial judge scheduled a third execution. However, eight minutes before the execution, Briggs stayed the execution and scheduled a hearing in Nueces County. Relators sought a writ of prohibition directing "Judge Briggs to take no further action or hold any further hearings on this application for habeas corpus." *Id.*, 351 S.W.2d at 893–894. We held:

Judge Briggs has no greater authority or responsibility in death penalty cases tried in counties not in his judicial district than any of the other more than 150 district judges of this state. If it be the law in Texas that every district judge must be satisfied before a death sentence may be carried out, and any district judge may prevent the execution of such a sentence upon grounds which this Court has rejected, then this Court is not a court of last resort in criminal matters in this state.

*Briggs*, 351 S.W.2d at 896.[10]

■ We find *Briggs* controlling. Any order by another state court which purports to

---

8. We have inherent authority to grant a stay under art. V, § 5. Tex.R.App.P. 233 provides that the judge of the district court where the defendant was convicted has statutory authority to stay an execution but only when the judge determines that additional proceedings are necessary pursuant to Tex.Code Crim.Proc.Ann. art. 11.07.

9. Judge Meyers states "the order of another court that Graham's execution be postponed ... does not interfere at all let alone disobey, this Court's mandate." *Holmes et al. v. Third Court of Appeals*, 885 S.W.2d 389, 420 (Tex.Cr.App., delivered this date) (Meyers, J., dissenting). This contradicts the literal language of our mandate which provides:

This cause came on to be heard on the transcript of the record of the Court below, and the same being considered, because it is the opinion of this Court that the *judgment be in all things affirmed* ... and that *this decision be certified below for observance.*

10. In *State ex rel. McNamara v. Clark*, 79 Tex. Crim. 559, 187 S.W. 760 (1916), a pool hall owner filed a civil suit to enjoin the county attorney from enforcing a statute known as the "pool hall law." *See*, Vernon's Sayles' Ann. Civ. Stat.1914, arts. 6319(a)–6319(n). Because the Supreme Court had previously held the statute invalid, *Ex parte Mitchell*, 109 Tex. 11, 177 S.W. 953 (1915), the trial judge in the civil case entered a writ of injunction against the county attorney precluding the county attorney from enforcing the statute. However, we had previously held the statute to be valid. *Ex parte Francis*, 72 Tex.Crim. 304, 165 S.W. 147 (1914). The county attorney applied to this Court for a writ of prohibition. We held:

... if the facts set out did not confer jurisdiction upon the district court to issue the writ of injunction, then its action in doing so is wholly void, and if the order is void, and under it the enforcement of the criminal laws of this state is being restrained, we think, under the law, this court has not only the authority, but it is its duty, to declare such order a nullity, in

stay a scheduled execution circumvents our decision and disobeys our mandate. *Briggs*, 351 S.W.2d at 894. Notwithstanding that respondent held the injunction was necessary to protect its jurisdiction over the appeal of the Graham's civil case, Tex.R.App.P. 43, respondent may not interfere with our exclusive jurisdiction or disobey our mandate. We hold that respondent had no jurisdiction to enjoin the scheduled execution.

■ In *State ex rel. Millsap v. Lozano*, we considered whether an order entered when the trial court had no jurisdiction over the cause was subject to mandamus. "Being without jurisdiction, the order entered after hearing is void and a writ of mandamus may issue to compel vacation of the order or orders.... " *Id.*, 692 S.W.2d at 482. *See, State ex rel. Eidson v. Edwards*, 793 S.W.2d 1 (Tex.Cr.App.1990); *and, Stearnes, supra.* Consequently, we hold that respondent's injunction must be vacated because respondent had no jurisdiction to enter an order enjoining Graham's execution.[11]

Therefore we sustain relators' contentions one, two and three and hold that relators are entitled to a writ of mandamus to compel the vacation of respondent's injunction.

## III.

The State contends Graham's only remedy is through post-conviction habeas corpus. *See*, Tex.Code Crim.Proc.Ann. art. 11.07. In response, Graham contends post-conviction habeas corpus does not lie in this case:

[h]abeas corpus is available only to review jurisdictional defects, or if the error is of constitutional dimension. Traditionally, however, the denial of fundamental or constitutional rights must have occurred during the underlying state criminal proceedings.

order that the county attorney may proceed with the proper performance of the duties enjoined on him by the other laws of this state the validity of which are not questioned. *Clark*, 187 S.W. at 762.

**11.** Our review is limited to respondent's jurisdiction to enjoin Graham's execution. Judge Meyers erroneously reads this opinion as ordering "the lower courts to relinquish jurisdiction" of

Graham's Brief at pg. 37. Graham further contends that claims of newly discovered evidence are not cognizable through habeas corpus, and, therefore, his only remedy is through the executive clemency process. In support of this contention Graham relies on *Ex parte Binder*, 660 S.W.2d 103 (Tex.Cr. App.1983).

### A. Tex.Code Crim.Proc.Ann. art. 11.07

Tex.Code Crim.Proc.Ann. art. 11.01 defines writ of habeas corpus:

The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.

Art. 11.07 § 2 provides the procedures for consideration of an application for writ of habeas corpus when the applicant is restrained by felony conviction. The writ is filed in the court where the conviction was obtained. Art. 11.07 § 2(b). If "controverted, previously unresolved facts ... material to the legality of the applicant's confinement" exist, the trial judge must resolve the issues of fact and may order "affidavits, deposition, interrogatories, and hearings" to assist in his determination. After the trial judge makes "findings of fact," the cause is transferred to this Court. Art. 11.07 § 2(d). We may deny relief "upon the findings and conclusions of the hearing judge," or docket the case "as though originally presented." Art. 11.07 § 3.

### B. Post–Conviction Habeas Corpus and Newly Discovered Evidence

In *Ex parte Binder*, 660 S.W.2d 103 (Tex. Cr.App.1983), Binder contended he was entitled to habeas relief based on newly discover-

the "issues raised by Graham's lawsuit," *Holmes ex rel. v. Third Court of Appeals*, 885 S.W.2d 389, 418 (Tex.Cr.App., delivered this date) (Meyers, J., dissenting). This opinion does *not* preclude respondent from addressing the issues raised by the Board in appealing the order compelling a hearing on Graham's request for clemency. Nor does this opinion preclude Graham from continuing to seek civil review of the clemency process.

ed evidence. *Id.,* 660 S.W.2d at 104–105. We denied relief concluding that "post-conviction habeas corpus has not been and is not now the appropriate remedy for an applicant whose claim for relief is based on newly discovered evidence." *Id.,* 660 S.W.2d at 106. However, we noted that Binder's contentions were "based on nothing more than newly discovered evidence." Binder made *no* claim of a violation of a "state or federal constitutional or statutory right." *Id.*

In *Ex parte Bravo,* 702 S.W.2d 189 (Tex. Cr.App.1982), Bravo contended he was entitled to habeas relief because the trial judge had improperly excused a veniremember under *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). *Bravo,* 702 S.W.2d at 190–191. Finding the error to be of constitutional dimension, we granted relief. *Id.* In its motion for rehearing the State contended Bravo could not raise such a claim in his application for writ of habeas corpus because it was not raised on direct appeal. *Id.,* 702 S.W.2d at 192. We overruled the State's motion noting: "It is well established that habeas corpus will lie ... to review jurisdictional defect or denials of fundamental or constitutional rights." *Id.,* 702 S.W.2d at 193. *See also, Ex parte Watson,* 601 S.W.2d 350, 352 (Tex.Cr.App.1980) ("[H]abeas corpus will lie only to review jurisdictional defects or denials of fundamental or constitutional rights.").

There is no question that Graham's liberty has been restrained by virtue of his death sentence. Thus to determine whether Graham may pursue a post-conviction application of habeas corpus we must view Graham's claims in light of *Binder, supra,* and *Bravo, supra.* Consequently, if Graham alleges the denial of a fundamental or constitutional right habeas corpus is the appropriate vehicle for this Court to address Graham's claims. *Id.*

### IV. Fundamental or Constitutional Right

Graham contends that newly discovered evidence demonstrates his innocence of the crime for which he was condemned. The Supreme Court considered a similar issue in *Herrera v. Collins,* —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), under the Due Process Clause of the Fourteenth Amendment.[12] Herrera was convicted of capital murder and sentenced to death in 1982. Ten years later, Herrera filed a federal habeas petition wherein he asserted newly discovered evidence that his brother committed the murder. Herrera contended he was entitled to federal habeas relief under the Due Process Clause of the Fourteenth Amendment and the prohibition against cruel and unusual punishment found in the Eighth Amendment. *Herrera,* —— U.S. at ———————, 113 S.Ct. at 856–859. Chief Justice Rehnquist, writing for the majority, stated: "We may assume for the sake of argument in deciding this case ... a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Herrera,* —— U.S. at ——, 113 S.Ct. at 869. From our reading of *Herrera,* we understand six members of the Supreme Court to have recognized the execution of an innocent person would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Graham,* 853 S.W.2d at 567, n. 1 (Maloney, J., concurring and dissenting). (citing *Herrera,* —— U.S. at ——, 113 S.Ct. at 853; *Id.,* —— U.S. at ——, 113 S.Ct. at 869 (O'Connor and Kennedy, JJ., concurring; *Id.,* —— U.S. at ——, 113 S.Ct. at 875 (White, J., concurring); *and, Id.,* —— U.S. at ——, 113 S.Ct. at 876 (Blackmun, Stevens, and Souter, JJ., dissenting)). With this sound and fundamental principle of jurisprudence we cannot disagree; such an execution would surely constitute a violation of a constitutional or fundamental right.

■ With the foregoing in mind, we read Graham's contentions as claiming his execu-

---

12. The Due Process Clause in the Fourteenth Amendment provides:
   ... No person shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
   U.S. Const. amend. XIV, § 1.

tion would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, we hold that habeas corpus is an appropriate vehicle for Graham to assert his claim. To the extent that it conflicts with this holding, *Binder* is expressly overruled.

## V.

### A. Threshold Standard

In *Herrera*, the Court recognized the need for an "extraordinarily high" threshold showing of innocence before habeas proceedings would be appropriate. *Herrera*, —— U.S. at ——, 113 S.Ct. at 869. The State agrees that before conducting proceedings on a claim of factual innocence based on newly discovered evidence a threshold should be required. The State contends that consideration of newly discovered evidence without the establishment of a threshold "would unfairly denigrate the constitutionally mandated right to trial by jury and would diminish, rather than enhance, the truth-seeking function of the criminal justice process." We agree.

Judge Maloney suggested such a threshold standard in *Ex parte Graham*, 853 S.W.2d 565, 567 (Tex.Cr.App.1993) (Maloney, J., concurring and dissenting, Baird and Overstreet, JJ., join).

> As to capital cases where newly discovered evidence is presented in support of a claim of actual innocence, this Court should establish a threshold standard.... In my opinion, the threshold question should be whether the newly discovered evidence, if true, would create a doubt as to the efficacy of the verdict to the extent that it undermines our confidence in the verdict and that it is probable that the verdict would be different....

■ We believe the adoption of this threshold standard will serve to eliminate the frivolous claims of factual innocence based on newly discovered evidence and provide for the efficient administration of such potentially meritorious claims. Consequently, we hold an applicant seeking habeas relief based on a claim of factual innocence must, as a threshold, demonstrate that the newly discovered evidence, if true, creates a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict and that it is probable that the verdict would be different. Once that threshold has been met the habeas court must afford the applicant a forum and opportunity to present his evidence. We now must determine the burden of proof the applicant must bear at that hearing in order to obtain habeas relief.

### B. The Burden of Proof

Both Chief Justice Rhenquist speaking for the majority and Justice Blackmun, in dissent, stated "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional." *Id.*, —— U.S. at —— and, ——, 113 S.Ct. at 856 *and*, 882. Although Chief Justice Rhenquist did not define precisely the burden associated with "a truly persuasive demonstration of actual innocence," we believe such a burden should be very high. The reasons for establishing such a high burden were articulated by Justice Blackmun in explaining why an otherwise constitutionally valid conviction should not be set aside lightly.

> ... [C]onviction after a constitutionally adequate trial strips the defendant of the presumption of innocence. The government bears the burden of proving the defendant's guilt beyond a reasonable doubt, [citations omitted], but once the government has done so, the burden of proving innocence must shift to the convicted defendant ... When a defendant seeks to challenge the determination of guilt after he has been validly convicted and sentenced, it is fair to place on him the burden of proving his innocence, not just raising doubt about his guilt.

*Herrera*, —— U.S. at ——, 113 S.Ct. at 882–883 (Blackmun, J., dissenting).

In his concurrence, Justice White articulated the burden we feel is appropriate in these cases:

> In voting to affirm, I assume that a persuasive showing of "actual innocence" made after trial, even though made after the expiration of the time provided by law

for the presentation of newly discovered evidence, would render unconstitutional the execution of petitioner in this case. To be entitled to relief, however, petitioner would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, "no rational trier of fact could find proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979)....

*Herrera*, —— U.S. at ——, 113 S.Ct. at 875 (White, J., concurring).

■ Therefore, we hold that in order to be entitled to relief on a claim of factual innocence the applicant must show that based on the newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof of guilt beyond a reasonable doubt.

This threshold standard and burden of proof will satisfy the Due Process Clause of the Fourteenth Amendment and we adopt them in the habeas context. If the applicant meets the threshold standard announced above the habeas judge must hold a hearing to determine whether the newly discovered evidence, when considered in light of the entire record before the jury that convicted him, shows that no rational trier of fact could find proof of guilt beyond a reasonable doubt.

Therefore, we sustain the fourth contention and hold that, pursuant to Tex.Code Crim.Proc.Ann. art. 11.07, Graham may appropriately couch his claims of factual innocence in the context of a violation of the Due Process Clause of the Fourteenth Amendment.[13]

## VI.

Finally, relators request that we assume original habeas corpus jurisdiction and resolve Graham's claims. However, in light of our resolution of relator's fourth contention, Graham is free to pursue his claims through the filing of an application under Tex.Code Crim.Proc.Ann. art. 11.07. But, there is no application presently pending before this Court, nor has the trial judge been given the opportunity to prepare findings of fact consistent with art. 11.07 § 3. Consequently, relators' fifth contention is dismissed.

## Conclusion

We withhold issuance of the writ of mandamus and accord respondent the opportunity to conform its actions with part II of this opinion. Should such action not be taken, the writ of mandamus will issue. Our stay of execution granted August 16, 1993, is vacated.

MILLER, J., dissents. Judge CAMPBELL, in his concurring opinion's discussion of "The Clemency Process," appears to mirror my earlier comments in my Dissent to the Order Filing and Setting Relator's Mandamus Actions, footnote 2. To that extent I agree with his "observations." Nevertheless, Judge MEYERS has the proper view of the correct disposition of this matter, and thus I join his opinion.

OVERSTREET, J., dissents to Part II for the reasons stated in his dissenting opinion but joins Parts III, IV, V, and VI of this opinion.

CAMPBELL, Judge, concurring.

I agree that the Court should grant mandamus relief, *see State ex rel. Holmes v. Third Court of Appeals*, 860 S.W.2d 873, 879 (Campbell, J., dissenting), and I join the opinion of the Court. I write separately, however, to elaborate upon the necessity to overrule, to the extent in conflict, our holding in *Ex parte Binder*, 660 S.W.2d 103 (Tex. Crim.App.1983).

In *Binder* we held that "post-conviction habeas corpus ... is not ... the appropriate remedy for an applicant whose claim is based on newly discovered evidence." *Id.*, at 106.

---

13. We note that in denying Graham's second application for writ of habeas corpus, we summarily overruled a similar claim based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Graham*, 853 S.W.2d at 565. We decide the issue today after extensive briefing by the parties and careful reconsideration of Graham's claim. Consequently, we believe our summary action was erroneous and Graham is not precluded from raising similar allegations in a subsequent writ application. *See,* Part VI., *infra.*

Two concerns, one constitutional and one prudential, now persuade me that we must modify our holding in *Binder* to the extent that the post-conviction habeas corpus process should be available to those few applicants who can meet the threshold standard set by a majority of the Court today.

### Due Process

Gary Graham does not come before this Court as an innocent man, but rather as one who has been convicted in accordance with due process of law of capital murder. *Graham v. State*, 671 S.W.2d 529 (Tex.Crim.App. 1984). The question before us, then, is not the legal guilt of Graham, but rather whether due process entitles a legally convicted individual to post-conviction judicial review of an "actual innocence" claim.

The due process clause of the Fourteenth Amendment prohibits criminal process that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977). Certainly, the execution of an innocent person would offend the most basic of principles, deeply rooted in our civilization, that the innocent must not be punished. Six members of the Supreme Court, in various combinations and opinions, so stated in *Herrera v. Collins*, —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Because our present state criminal process presents a substantial risk that that basic principle will be violated, I believe that the process is constitutionally deficient. Given the interests at stake and the relatively slight cost to the government of litigating those few claims that will meet the minimum threshold set by the Court today, due process of law requires that a judicial forum be available for the assertion of such claims.

### The Clemency Process

In *Herrera v. Collins*, —— U.S., at —— – ——, 113 S.Ct., at 868–869 (1993) (some citations omitted), the Court noted the following:

Executive clemency has provided the "fail safe" in our criminal justice system.... Recent authority confirms that over the past century clemency has been exercised frequently in capital cases in which demonstrations of "actual innocence" have been made....

In Texas, the Governor has the power, upon the recommendation of a majority of the Board of Pardons and Paroles, to grant clemency. Tex. Const. art, IV, § 11; [Tex. Code Crim.Proc.] Art. 48.01. (Vernon 1979). The board's consideration is triggered upon request of the individual sentenced to death, his or her representative, or the Governor herself. In capital cases, a request may be made for a full pardon, a commutation of death sentence to life imprisonment or appropriate maximum penalty, or a reprieve of execution. The Governor has the sole authority to grant one reprieve in any capital case not exceeding 30 days.

The Texas clemency procedures contain specific guidelines for pardons on the ground of innocence. The board will entertain applications for a recommendation of full pardon because of innocence upon receipt of the following: "(1) a written unanimous recommendation of the current trial officials of the court of conviction; and/or (2) a certified order or judgment of a court having jurisdiction accompanied by certified copy of the findings of fact (if any); and (3) affidavits of witnesses upon which the finding of innocence is based." Tex.Admin.Code § 143.2....

What the Supreme Court in *Herrera* did not realize, though, was that the policy of this Court, as expressed in *Binder*, rendered subsection (2) of § 143.2 unworkable and useless, for under *Binder* there is simply no way for a convicted individual to get into "a court having jurisdiction" to get his claim heard under subsection (2). And it is fairly obvious that subsection (1) is unlikely ever to be utilized successfully. Thus, under *Binder* there is a serious flaw in the Texas clemency process for claims of actual innocence.

Under the Court's holding today, in contrast, subsection (2) will be rendered meaningful. A convicted individual can file an application for writ of habeas corpus under Article 11.07 and then, if he wishes, use the findings of that court to file an application for

a recommendation of full pardon under § 143.2(2).

With these comments, I join the opinion and judgment of the Court.

WHITE, Judge, concurring in part and dissenting in part.

## I.

I agree with the majority that we should sustain relators' first, second, and third contentions, and find relators are entitled to a writ of mandamus to compel the vacation of respondent's injunction. I believe respondent does not have the jurisdiction to enjoin the execution of Gary Graham, which would be an unlawful interference with the mandate of this Court. To decide otherwise, would be the dangerous precedent of permitting lower courts to interfere with the mandates of this Court whenever they perceive it to be necessary in a civil lawsuit. I therefore join Parts I and II of the majority opinion.

This does not mean that I believe the District Court lacked jurisdiction to hear Gary Graham's claim: that the Board of Pardons and Paroles violated his right to due course of law by denying his request for executive clemency without permitting him a hearing to present his request. I believe this question into the constitutional viability of the procedures followed by the Board is a matter of civil law. Our State's executive clemency provisions do not constitute another step in the appellate review of a criminal conviction. These provisions do not provide a venue to contest the validity or integrity of a criminal conviction. They involve the issuance of orders pursuant to civil statutes, not criminal statutes. Compare with *Curry v. Wilson*, 853 S.W.2d 40, at 43 (Tex.Cr.App. 1993). I believe that is a matter to be resolved in courts with jurisdiction over matters of civil law.

However, I think they are an important safeguard and remedy against the wrongful punishment of an individual who is actually innocent.

## II.

Because I also believe that the State's executive clemency procedures are the only state remedy available to an inmate who advances a claim of actual innocence after his conviction is final, I disagree with the majority's holding that Graham is entitled to pursue his claim of actual innocence through this state's habeas procedures. As the Supreme Court explained in *Herrera v. Collins*, —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), clemency is the traditional state remedy for these claims.

In *Herrera*, the Court found the proper avenue for a claim of newly discovered evidence of innocence was executive clemency procedures, as it "is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." *Herrera v. Collins*, —— U.S. at ——, 113 S.Ct. at 866. The Court determined that the procedures set up by the Texas Legislature for executive clemency in this State were a sufficient remedy for the claim advanced by Herrera. "History shows that the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency." *Herrera v. Collins*, —— U.S. at ——, 113 S.Ct. at 869.

In its opinion, the Court points out that "a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional." *Herrera v. Collins*, —— U.S. at ——, 113 S.Ct. at 869. If there "were no state avenue open to process such a claim," federal habeas relief would be warranted. *Id.* Yet, even though they held that Texas' executive clemency procedures were an adequate remedy to process a claim of actual innocence, the Court reviewed the merits of Herrera's claim by assuming, arguendo, that Herrera had advanced such a constitutional claim. *Herrera*, —— U.S. at ——, 113 S.Ct. at 870.

After assuming for the sake of the argument that Herrera had advanced a bona fide claim under the Fourteenth Amendment, the Court reviewed the evidence which Herrera brought forward and concluded that his showing of innocence fell "far short of that which would trigger the sort of constitutional

claim which we have assumed, arguendo, to exist." *Herrera,* —— U.S., at —— - ——, 113 S.Ct., at 869–870. The Court relied on the protections of the Due Process Clause in reaching this decision.

Today, the majority acts to create another, and, in my view, unnecessary and dangerous, remedy for claims like Herrera and Graham's within our state. It creates this remedy in our state habeas system. In order to do this, the majority assumes that Graham's claim is the same as Herrera's claim: that his execution would violate the Due Process Clause of the Fourteenth Amendment.[1] The majority then holds that state habeas corpus "is an appropriate vehicle for Graham to assert his claim." I do not believe that we should add a layer of protection for Fourteenth Amendment claims between this state's executive clemency procedures and the federal habeas system.[2]

To reach their conclusion, the majority views Graham's claim to be a demonstration of "his innocence of the crime for which he was condemned." Instead, I would hold Graham's claim of "innocence" to be nothing more than window dressing over a claim that is actually a claim of "newly discovered evidence." Graham has assembled what he believes to be new evidence in support of his alibi and in support of his claim that another individual committed the capital murder for which he was convicted. Actual innocence is merely the conclusion which he hopes a tribunal will reach upon review of his "newly discovered evidence."

Graham readily admits that a claim of newly discovered evidence, as this Court ruled in *Ex Parte Binder,* 660 S.W.2d 103 (Tex.Cr.App.1983), is not a fit subject for the exercise of state habeas corpus powers. *Binder,* at 106. I believe these claims do not involve challenges to the legality of the proceedings in which the claimants were convict-

ed, or challenges to the constitutionality of those proceedings which produced those convictions. *Binder,* at 106. I would hold they are not properly advanced in state habeas proceedings. ·

I draw more support for my argument that Graham's claim is not suitable for state habeas from this Court's previous discussions of the nature of a claim of "newly discovered evidence." In *Drew v. State,* 743 S.W.2d 207 (Tex.Cr.App.1987), this Court decided that a claim of newly discovered evidence will prevail only if, "The materiality of the evidence is such as would probably bring about a different result in another trial." *Drew v. State,* at 226; and cases cited therein. Essentially, a reviewing court is asking whether or not the newly discovered evidence would contribute enough to a jury's deliberations that they would reach a different verdict.

I do not mean to imply that deciding the materiality of newly discovered evidence is the same thing as harmless error analysis. I do believe the two processes are substantively similar, since the objective is to decide whether a result of a trial would have been different if the newly discovered evidence would have been admitted there, or if the error's contribution to the verdict at trial had not occurred. We have held that state constitutional error that is subject to harmless error analysis is not cognizable on a writ of habeas corpus, because it would, at best, render a conviction voidable. *Ex Parte Dutchover,* 779 S.W.2d 76, at 77 (Tex.Cr.App. 1989). Even if Graham's claim is a federal constitutional claim, and if his newly discovered evidence is sufficiently material, it would still not render his conviction void. At best, that conviction would be voidable, dependent on the materiality of the newly discovered evidence.

I believe that, because a claim such as that of Graham does not challenge the legality of

---

1. When the instant cause was submitted for oral argument, and Graham's counsel was permitted to address this Court for respondent, I recall Graham's counsel arguing his claim solely, and adamantly, in terms of the Texas Constitution and Art. I, § 19.

2. It would be appropriate for the State Legislature, if it believes our state's executive clemency

procedures need to be more protective of an inmate's rights to due process, to change those procedures to ensure that a person such as Graham will get a more adversarial hearing than he received in the instant cause. The majority's decision will increase the burden on our state's already over-burdened trial courts.

the proceeding in which he was convicted or the constitutionality of the proceedings which resulted in his conviction, and because his challenge would not only render that conviction voidable, Graham's claim does not represent an issue that is cognizable on state habeas.

After the majority assumed that Graham's Fourteenth Amendment rights were violated in the instant cause (an assumption I cannot agree with), the majority holds that *Ex Parte Bravo,* 702 S.W.2d 189 (Tex.Cr.App.1982) (on rehearing) controls. In my view, *Bravo* is substantively different from the instant cause. *Bravo* dealt with a case wherein veniremembers were improperly excluded, thereby violating the Sixth and Fourteenth Amendments of the United States Constitution. *Bravo,* at 192–193. This represented a claim of constitutional dimension addressing the proceedings (specifically, the selection of the jury) in which the claimant was convicted, and was properly raised in a writ of habeas corpus. *Bravo,* Id. As such, I believe *Bravo* is distinguishable from the instant cause.

I do not agree with the majority that our state habeas system is the proper vehicle to advance a Fourteenth Amendment claim of actual innocence. I do not agree that Graham's execution without first being granted a habeas corpus forum in this State's courts would be violative of the Fourteenth Amendment. The Federal habeas system, as decided by the Supreme Court, is sufficient to handle such claims if they are not first resolved in the State's executive clemency process. As Judge Clinton pointed out in his concurring opinion in *Ex Parte Dutchover,* 779 S.W.2d, at 78, this Court is certainly "not beholden to the federal courts" to review federal constitutional claims on collateral attack. In light of the Supreme Court's reliance on this state's executive clemency procedures as the proper avenue for an inmate's claims of actual innocence, I believe it is

neither necessary, nor very wise, to open up the state habeas system for such claims. I would hold that *Binder* controls the instant cause.

Lastly, I believe the decision of the majority is potentially dangerous. It is possible that advocates before this Court will use the majority's decision today as a crowbar to open the door to a state forum in our trial courts for every inmate to relitigate his conviction years after he or she has already enjoyed every protection our criminal justice system extends to those individuals who were, at one time, presumptively innocent.

A decision to deny Graham a state habeas avenue for his claim of actual innocence would not cut him off from pursuing that claim. In a case such as his, where the State Board of Pardons and Paroles summarily denied his request for executive clemency, the state avenues which the Supreme Court spoke of in *Herrera* would have been exhausted. Under *Herrera,* and pursuant to the Fourteenth Amendment, Graham could have his forum for his claim that he is actually innocent under federal habeas relief prior to his execution, without the benefit of a state district court injunction of that mandate. If the Legislature finds the Board of Pardons and Paroles needs to have a different procedure for dealing with claims such as Graham's, they can create one.[3] None of this would require this Court to act by giving to Graham an opportunity to pursue his claim in state habeas.

Because I believe there should be no state habeas relief for a Fourteenth Amendment claim of actual innocence, I see no need to recommend a threshold standard for presentation of such a claim, or a burden of proof for resolving that claim.

I respectfully dissent to Parts III, IV, and V of the majority opinion.

For the reasons stated above, I join parts I and II of the majority opinion.

3. In response to Judge Campbell's concurring opinion, I disagree that § 143.2(2) is "unworkable and useless." If an inmate files a writ with this Court claiming he has "newly discovered evidence" and we deny the writ based upon *Ex parte Binder,* that denial would be an order of a court having jurisdiction. There would, of course, be no "findings of fact", but under § 143.2(2) those findings are optional. The inmate could take that certified order to the Board then subsection (3) would "kick-in." Whether § 143.2 can be utilized successfully by an inmate is a matter to be resolved by the Legislature.

OVERSTREET, Judge, concurring in part and dissenting in part.

In this mandamus action we must decide whether the Court of Appeals for the Third District, [hereinafter respondent] in Cause No. 3–93–421–CV, styled Texas Board of Pardons and Paroles, et. al. v. Gary Graham, exceeded its statutory authority by granting injunctive relief, that in effect stayed the execution of Gary Graham [hereinafter Graham]. At issue is the relationship between respondent's statutory right to preserve the subject matter on appeal pending review of a district court's decision and this Court's constitutional and statutory duty as the court of last resort in criminal prosecutions.

I.

On July 21, 1993, Graham filed a civil suit in the 299th District Court of Travis County [hereinafter civil court] seeking an order compelling the Board of Pardons and Paroles [hereinafter Board] to hold a "due course of law" hearing on his request for clemency.[1] Specifically, the suit claimed that the procedure employed by the Board in its clemency determinations constitute a denial of due course of law in violation of art. I, §§ 13 and 19,[2] and art. IV, § 11 [3] of the Texas Constitution. On August 9, 1993, the civil court entered a temporary injunction and in its order found that Graham was entitled to a "due course of law hearing on his post conviction claim of innocence."

1. Graham presented a request for clemency and/or reprieve from the Board and said request was refused. Graham again presented a request for clemency and/or reprieve and the Board has not acted upon the request.

2. Sec. 13 states:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law. TEX. CONST. art. I, § 13. .
Sec. 19 states:
No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. TEX. CONST. art. I, § 19. .

3. Article IV, § 11 provides in part:

On August 10, 1993, the Board filed notice of appeal to respondent. On August 12, 1993, this Court entered an order denying leave to file an original mandamus action challenging the civil court's order brought by the Harris County District Attorney [hereinafter district attorney] because the Board's notice of appeal suspended the civil court's order and none of the parties were "presently enjoined from taking any action" including the execution of Graham. On August 12, 1993, Graham filed an "Emergency Motion for Stay of Execution" with respondent. On August 13, 1993, respondent entered a writ of injunction prohibiting the named parties from proceeding with the execution of Graham pending resolution of the appeal.

Respondent determined it had authority to issue such temporary orders as it finds necessary to preserve the rights of the parties until disposition of the appeal. Tex.R.App. Pro. 43(c). Respondent found that the execution of Graham pending disposition of the appeal would affect the parties' rights pending the disposition of the appeal from the civil court's order of injunction and would destroy the subject matter of the lawsuit and to do so would interfere with respondent's jurisdiction over the appeal.

Relators, the Board and the district attorney, sought mandamus relief in this court to set aside the order by respondent.[4] We de-

The legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions....
In all criminal cases, except treason and impeachment, the governor shall have power, and after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons. TEX. CONST. art. IV, § 11 (1876, amended 1989).

4. The district attorney urged that respondent's order is unlawful because: (1) the order illegally vacates a previously existing order of a court of equal and competent jurisdiction thereby usurping that court's original jurisdictional authority over Graham's case; and (2) the order violates the original jurisdiction of the Court under Art. V, § 5 Texas Constitution.

The Board urged that respondent's order is unlawful because: (1) exclusive jurisdiction to

nied leave to file the applications, *State ex. rel. Holmes v. Third Court of Appeal,* 860 S.W.2d 873 (Tex.Cr.App.1993), but on our own motion stayed Graham's execution. On November 9, 1993, this Court reconsidered the motions requesting mandamus relief, granted leave to file, consolidated the motions and set them for submission. (Clinton, J., Miller, J. and Overstreet J., dissenting).

## II.

Appellate review is restricted to those actions and proceedings that are within the appellate court's jurisdiction. An appellate court has jurisdiction to determine whether it has jurisdiction on its own motion or upon motion of a party to the appeal. 4 Tex. Jur.3d Appellate Review § 25 (1980). Once jurisdiction is invoked, that jurisdiction embraces every thing in the case and every question arising which can be determined in the case, until it reaches its termination and the jurisdiction is thereby exhausted. *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Cr.App. 1980).

It is well settled that once a court of appeals acquires jurisdiction of a cause, whether by appeal or by the exercise of its original jurisdiction, it may issue writs of injunction as may be necessary to protect or enforce that jurisdiction. *Baird v. Sam Houston Elec. Co-op,* 627 S.W.2d 732 (Tex. App.—Houston [1st Dist.] 1982, no writ) (citing *City of Houston v. City of Palestine,* 114 Tex. 306, 267 S.W. 663 (1924). This power, however, is limited generally to preserving the status quo, and to the protection of the subject matter in order that the case will not become moot. *Id.* 267 S.W. at 733. If appellate jurisdiction is threatened, a court of appeals' right to preserve and protect it cannot depend on the adequacy of legal remedies which might be available to the litigants but which are not available to the court.[5]

*Pace v. McEwen,* 604 S.W.2d 231 (Tex.Civ. App.—San Antonio 1980, no writ). This Court's appellate jurisdiction is limited to criminal law matters. Tex. Const. art. V, § 5; Article 4.04, V.A.C.C.P. We have exclusive appellate jurisdiction to review a capital murder conviction wherein a sentence of death has been assessed. Articles 4.04 § 2 and 4.03, V.A.C.C.P. As the court of last resort in criminal matters, no other state court has authority to override or circumvent this Court's decisions or disobey its mandates. *State ex rel. Wilson v. Briggs,* 171 Tex.Crim. 479, 351 S.W.2d 892 (Tex.Cr.App. 1961).

Relators rely on our decision in *Briggs, supra,* for the proposition that respondent exceeded its jurisdiction when respondent enjoined the execution of Graham. *Briggs* is distinguishable. In *Briggs,* we issued a writ of prohibition because the relief sought enforced the original jurisdiction of this Court in habeas corpus cases. In *Briggs,* the judge of the 117th District Court in Nueces County stayed the execution of a capital murderer upon an application for habeas corpus relief. We set aside the stay and denied the habeas application. Thereafter, the trial judge of the convicting court rescheduled the execution date. Applicant presented another eleventh hour habeas corpus application. Again, the judge of the 117th District Court granted a stay. Relator, in that action, petitioned this Court for a writ of prohibition against the judge of the 117th District Court to prevent him from taking any further action or holding any further hearings on the application. We granted relief. The 117th District Court was re-litigating by way of habeas corpus applications issues that had already been raised and rejected by this Court in previous habeas applications or on original appeal. We were protecting our original habeas corpus jurisdiction rather than exclusive

grant a stay of execution or otherwise modify a valid death warrant lies with either the district court which issued the death warrant or the Court of Criminal Appeals; (2) respondent is procedurally barred from issuing an order that is not coextensive with the limits of its appellate jurisdiction; and (3) a writ of habeas corpus is the only legally cognizable means by which Graham may seek a stay of execution. The Board asks this Court to assume original habeas corpus

jurisdiction over this case and respond to the issue raised by Graham.

5. Once respondent was vested with jurisdiction to decide the civil court's order of injunction, Graham could have sought a stay of execution from the 182nd District Court of Harris County or this Court. This remedy of seeking a stay of execution was not available to respondent.

appellate jurisdiction to review death penalty cases.

The posture of this case is decidedly different than *Briggs*. Respondent's injunction that in effect stayed the execution of Graham was not by way of a habeas corpus application nor was it entered to review previously raised and rejected issues. It was entered in aid of respondent's appellate jurisdiction and not as an advance determination of the merits of the appeal.

## III. ·

Mandamus is a drastic remedy to be invoked in extraordinary situations. *Perkins v. Court of Appeals*, 738 S.W.2d 276, 284 (Tex.Cr.App.1987). In fact, we have said, "A willingness to issue writs of mandamus in less that extraordinary situations would encourage piecemeal litigation and frustrate the efficient administration of justice." *State ex rel. Sutton v. Bage*, 822 S.W.2d 55, 57 (Tex. Cr.App.1992). In order to be entitled to mandamus relief, the relator must establish two essential requirements: (1) that the act sought to be compelled is ministerial as opposed to discretionary, and (2) no other adequate remedy at law is available. *Stearnes v. Clinton*, 780 S.W.2d 216, 219 (Tex.Cr.App. 1989).

## IV.

Respondent, in response to Graham's motion for a stay, issued the injunction on the basis that "to proceed with the execution as scheduled would affect the parties' rights pending the disposition of the appeal ... and would destroy the subject matter of the lawsuit." Relators contend that respondent had no jurisdiction to issue an injunction which is in effect a stay of Graham's execution because it usurps the jurisdiction of the convicting court and this Court. Specifically, relators argue that "exclusive jurisdiction to grant a stay of execution or otherwise modify a valid death warrant lies with either the district court which issued the death warrant or the Court of Criminal Appeals."

At this point it is important to remember the circumstances under which respondent issued the order. Graham sought and received injunctive relief against the Board in a civil suit in district court. Relator Board then filed a notice of appeal, thereby invoking the authority of respondent to decide the interlocutory appeal. The notice of appeal superseded any orders of the civil court and the execution could proceed as scheduled. Under respondent's reasoning, its order was necessary to preserve the subject matter of the appeal because executing Graham would impermissibly interfere with its jurisdiction over the appeal and render any decision on the propriety of the civil court's orders moot. Under relators' reasoning respondent's order impermissibly interfered with this Court's exclusive jurisdiction.

## V.

Respondent's discretionary exercise of its statutorily authorized injunctive relief powers in effect stayed the execution of Graham. However, in my opinion such does not impermissibly interfere with this Court's exclusive appellate jurisdiction in death penalty cases because it did not and does not address the merits of the capital murder conviction. Respondent issued the injunction for the limited purpose of preserving and protecting its jurisdiction—a right of all courts in this State. Thus, respondent did not exceed its authority by preserving the subject matter of an interlocutory appeal.

I would hold that respondent's duties herein were discretionary and therefore, find that relators are not entitled to a writ of mandamus to compel the vacation of respondent's injunction. Because the majority holds otherwise, I dissent to part II of the majority opinion, but join the remainder of that opinion.

CLINTON, Judge, dissenting.

In these applications for writs of mandamus and prohibition, relators John B. Holmes, Harris County District Attorney, and the Texas Board of Pardons and Paroles (Board) and Texas Department of Criminal Justice (Department) ask this Court to order the Third Court of Appeals to lift its temporary injunction prohibiting execution of convicted capital murderer Gary Graham. The question presented is whether the court of

appeals can enjoin Graham's execution in order to protect the rights of the parties in a civil lawsuit initiated by Graham against the Board and the Department. See Tex.R.App. Pro., Rule 43(c). In that lawsuit Graham alleges the due course of law as guaranteed by the Texas Constitution prohibits his execution absent a clemency hearing before the Board. Because the court of appeals acted within its authority under our appellate rules, and because its action in no way encroaches upon this Court's jurisdiction, we should deny relief.

## I.

This Court affirmed Graham's capital murder conviction on direct appeal in 1984. See *Graham v. State*, 671 S.W.2d 529 (Tex.Cr. App.1984). On three occasions Graham has petitioned this Court for post-conviction habeas corpus relief pursuant to Article 11.07, V.A.C.C.P. On all three occasions we denied the requested relief. See *Ex parte Graham*, 853 S.W.2d 564 (Tex.Cr.App.1993). On June 2, 1993, we granted a stay of execution on our own motion, but that stay expired by its own terms 30 days later. The trial court subsequently set Graham's execution for August 17, 1993.

On July 21, 1993, Graham filed suit in the 299th District Court in Travis County, Judge Pete Lowry presiding, seeking declaratory, mandamus, and injunctive relief. Specifically, Graham sought a declaratory judgment that the Texas Constitution mandates a hearing before the Board to allow him to ventilate newly discovered evidence he alleges proves he is innocent of the capital offense for which he stands to die, as well as injunctive and mandamus relief to prevent his scheduled execution until such time as he should obtain that hearing before the Board. On August 9, Judge Lowry entered an order temporarily enjoining execution unless by August 10 the Board should have held a clemency hearing, according to specifications set out in the order. He set the cause for trial on the merits on August 23, 1993.

The Attorney General filed notice of appeal of this interlocutory matter on behalf of the Board and the Department on August 10, 1993. This had the effect of suspending Judge Lowry's order granting injunctive relief.[1] Accordingly, on August 12, 1993, Graham filed a motion in the court of appeals requesting it to enjoin his scheduled execution pending the interlocutory appeal of Judge Lowry's decision to grant injunctive relief, in order to preserve the subject matter of the lawsuit. On August 13, the court of appeals granted that request,[2] and ordered that the interlocutory appeal be accelerated.

---

1. Relator Holmes filed an application for writ of mandamus in this Court asking us to order Judge Lowry to dismiss his temporary injunction. In an unpublished order we observed:

> "... The notice of appeal recites the named defendants are exempt from filing a cost bond.
> "Tex.R.App.Pro. Rule 43(a) provides, in pertinent part that the pendency of an appeal from an order granting interlocutory relief does not suspend the order appealed unless 'the appellant is entitled to supersede the judgment without security by giving notice of appeal.' Because the Board of Pardons and Paroles is exempt from posting bond, Judge Lowry's order was suspended by operation of law due to the notice of appeal. *Ammex Warehouse Company v. Archer*, 381 S.W.2d 478 (Tex.1984 [sic] ); *City of San Antonio v. Clark*, 554 S.W.2d 732 (Tex.Civ.App.—San Antonio, 1977, no writ).
> "In view of the current status of Judge Lowry's order, none of the parties are presently enjoined from taking any action. Therefore, we deny leave to file the instant original application for writ of mandamus."

2. In its unpublished order the court of appeals observed:

> "... On perfection of an appeal from an interlocutory order, an appellate court may issue 'such temporary orders as it finds necessary to preserve the rights of the parties until disposition of the appeal.' Tex.R.App.P. 43(c); see *Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n*, 786 S.W.2d 789, 790 (Tex.App.— Houston [1st Dist.] 1990, no writ). An appellate court may issue writs as necessary to enforce its jurisdiction by preserving the subject matter of the lawsuit pending consideration of the merits of the appeal. Tex. Gov't Code Ann. § 22.221(a) (West 1988); *Mote Resources, Inc. v. Railroad Comm'n*, 618 S.W.2d 877, 878–79 (Tex.App.—Austin 1981, orig. proceeding).
> "This Court acquired jurisdiction over the proceeding when appellants filed their notice of appeal. *Ammex Warehouse Co.*, 381 S.W.2d at 482; see Tex. Gov't Code Ann. § 20.220(a) (West 1988). In his affidavit in support of the motion, Graham's counsel states that, on August 11, 1993, an assistant attorney general and counsel for appellants told him that appel-

Relators first filed their applications for writ of mandamus on August 16, 1993. This Court denied leave to file the applications, *State ex rel. Holmes v. Third Court of Appeals,* 860 S.W.2d 873 (Tex.Cr.App.1993), but, paradoxically, granted an attendant emergency motion for stay of execution filed by Graham on the same day. That stay remains in place to this day.[3] On November 9, 1993, we "reconsidered" our denial of leave to file relators' applications for writ of mandamus under Tex.R.App.Pro., Rule 211(c), and granted them in an unpublished order. The applications were consolidated, and oral argument was scheduled and heard on December 1, 1993. Applicants pray that we issue a writ of mandamus or prohibition to order the court of appeals to dissolve its injunction against Graham's execution.

## II.

As always in an application for writ of mandamus or prohibition, the threshold question is whether that extraordinary remedy will lie. Since 1978, Article V, § 5 of the Texas Constitution has conferred upon this Court original mandamus and prohibition authority "in criminal law matters[.]" Of course, the Court has also long had "the power to issue such other writs as may be necessary to protect its jurisdiction and enforce its judgments." *Id.* It is not entirely clear which of these powers relators are attempting to invoke—our general authority to issue writs "in criminal law matters," or our ancillary authority to issue writs to protect our jurisdiction. Either way, mandamus does not lie.

To begin with, the question whether a court of appeals can issue temporary injunctive relief in the protection of its own jurisdiction is hardly "a criminal law matter." Even if it were, before this Court will exercise its general mandamus power, we look to see whether applicants have an adequate remedy at law, and whether the act they seek to compel or prohibit is either purely ministerial, is to set aside an unauthorized order, or else is the only act discretion will allow under the law and the facts. E.g., *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978). Applicants meet none of these criteria. Finally, the Court need not exercise its power to issue writs to protect our own jurisdiction because, so far, the court of appeals has done nothing to compromise either the jurisdiction or any judgment of this Court.

### Criminal Law Matters

In order to decide whether applicants are requesting the exercise of our original mandamus power "in criminal law matters," it is

---

lant's had not rescheduled the execution and that they 'planned to carry out the execution of Mr. Graham on August 17, 1993.'

"Clearly, to proceed with the execution as scheduled would affect the parties' rights pending the disposition of the appeal from the district-court order of injunction and would destroy the subject matter of the lawsuit. See *Mote Resources, Inc.,* 618 S.W.2d at 879. Because to do so would interfere with this Court's jurisdiction over the appeal, we grant the request for relief."

3. By what authority this Court granted the stay on August 16 is a puzzle. Having contemporaneously denied leave to file application for writ of mandamus, and having nothing else before us save Graham's motion that, in the event we grant leave to file, we stay his execution, one might wonder in what respect this court retained jurisdiction to act. We have done so under similar circumstances before. See *Ex parte Herrera,* 828 S.W.2d 8 (Tex.Cr.App.1992) (stay of execution granted by this Court pending disposition of petition for certiorari in the United States Supreme Court). We have also declined to do so under similar circumstances. See *Ex parte Lockhart,* 868 S.W.2d 346 (Tex.Cr.App.1993) (motion for stay of execution unaccompanied by application for writ of habeas corpus denied for want of jurisdiction).

In any event, so long as our stay of execution is in place, one might wonder why the question whether the court of appeals had authority to enjoin Graham's execution pending disposition of the State's interlocutory appeal of Judge Lowry's order is not simply moot. Indeed, one might wonder why our stay of execution does not render interlocutory appeal in the court of appeals of the question whether Judge Lowry can enjoin Graham's execution pending trial on the merits of Graham's petition for declaratory judgment is not likewise moot, since presumably Lowry can proceed to trial without worry that the subject of the litigation will expire so long as our stay remains in place. However, presumably the Court will lift its stay of execution should it find that the court of appeals lacked authority to issue injunctive relief, and so proceeds to the merits of the question whether mandamus relief lies.

necessary to keep a proper perspective. The issue is a narrow one: Did the court of appeals have authority to grant an injunction against the Board and the Department in order to protect the subject matter of the litigation? We must keep in mind that the only matter presently before the court of appeals is an interlocutory appeal. Whether due course of law compels the Board to conduct a clemency hearing is not before this Court or the court of appeals. All that is yet justiciable in the court of appeals is the question whether Judge Lowry had authority to enter an injunctive order to preserve the subject matter of the litigation currently pending in *his* court. All that is before this Court, in turn, is the question whether the court of appeals acted within its authority to enjoin the execution pending resolution of the interlocutory appeal.

This Court has long recognized that the appropriateness of equitable relief—even the appropriateness of enjoining litigants from violating provisions of the Penal Code—is peculiarly a civil law question. *Ex parte Zuccaro*, 72 Tex.Cr.R. 214, 162 S.W. 844 (1913); *Ex parte Mussett*, 72 Tex.Cr.R. 487, 162 S.W. 846 (1913).[4] "[I]t is well settled that equity will interfere when necessary to protect civil or property rights, and the fact that the commission of a statutory offense must be enjoined as an incident to the giving of proper relief will not deprive the court of its jurisdiction in this respect." 18 Tex. Jur.3rd Criminal Law § 45, at 81 (1982).

4. When a district court has purported to enjoin prosecution of a criminal case, as opposed to enjoining criminal conduct, this Court has stepped in and issued the writ of prohibition. *State ex rel. McNamara v. Clark*, 79 Tex.Cr.R. 559, 187 S.W. 760 (1915). So has the Texas Supreme Court. *Crouch v. Craik*, 369 S.W.2d 311 (Tex.1963). But in *McNamara* we intervened not under our only-recently-endowed general power to issue writs of mandamus and prohibition "in criminal law matters," but in the protection of our own jurisdiction. However, nothing about the temporary injunction granted by the court of appeals in this cause threatens this court's jurisdiction. See text, *post*.

5. See also Administrative Procedure and Texas Register Act, Article 6252–13a, § 12, V.A.C.S., which provides in relevant part:
   "Sec. 12. The validity or applicability of any [state agency] rule ... may be determined in

Graham filed suit under the Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code. Section 37.003(a) of the Act provides that "[a] court of record within its jurisdiction has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[5] Under Article V, § 8 of the Texas Constitution:

"District Court Jurisdiction consists of ... original jurisdiction of all actions, proceedings, and remedies, except in cases where ... original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction."

Thus, unless "original jurisdiction" over the question whether the Board must conduct a clemency hearing has been "conferred ... on some other court, tribunal, or administrative body[,]" the 299th District Court had original jurisdiction to entertain Graham's lawsuit. In any event, the district court would have jurisdiction at least to decide whether it had jurisdiction over the action, and to dismiss the petition should it find it does not.

The appellate jurisdiction of the court of appeals extends, in turn, to "all cases of which the District Courts ... have original ... jurisdiction." Article V, § 6, Texas Constitution. It may be that Judge Lowry mistakenly concluded he had jurisdiction to declare whether the Board must hold a clemen-

an action for declaratory judgment in a district court of Travis County, and not elsewhere, if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff...."
It is true that under Section 21(f) of APTRA, section 12 does not apply to the Board "in the conducting of hearings or interviews relating to the grant, rescission, or revocation of parole or other form of administrative release." To the extent Graham may be seeking a full pardon on account of innocence, however, the exception in Section 21(f) may not apply. The definition of "administrative release" contained in the Board's own rules does not seem to embrace full pardon. Compare 37 Texas Administrative Code, § 141.111 and § 143.2. It is at least arguable, therefore, that Graham could bring his lawsuit under APTRA as well.

cy hearing, and that he therefore had no authority to decide Graham's petition, much less grant injunctive relief to preserve the subject matter.[6] But the court of appeals has jurisdiction to decide whether Judge Lowry erred to assume his court had jurisdiction. See 4 Tex.Jur.3d Appellate Review § 25, at 40–41 (1980); *Matlock v. Williams,* 281 S.W.2d 229 (Tex.Civ.App.—Beaumont 1955, no writ). Indeed, in his interlocutory appeal to the court of appeals relator Holmes invokes that court's appellate jurisdiction to argue that the district court had no jurisdiction over the question of how the Board exercises its clemency function because judicial intervention would violate separation of powers under Article II, § 1, Texas Constitution.[7]

So far, then, we have an appellate question involving jurisdiction of the lower court to encroach upon an executive function. Obviously Judge Lowry concluded his court had that jurisdiction, and now, in order to decide the interlocutory question whether he could enjoin the Board and the Department, the court of appeals must decide if that conclusion is correct. In the meantime, the court of appeals has issued its own temporary injunction under Tex.R.App.Pro., Rule 43(c), and V.T.C.A. Government Code, § 22.221(a). The "subject of the mandamus litigation" is simply whether the court of appeals somehow exceeded its authority to do so. See *Smith v. Flack,* 728 S.W.2d 784, at 788 (Tex.Cr.App. 1987). That the court of appeals may be called upon to decide whether Judge Lowry had jurisdiction to decide whether the Board must hold a hearing does not transform the question before this Court—can the court of appeals itself grant injunctive relief to pre-

serve the subject matter of the interlocutory appeal?—into a criminal law matter.

It is perhaps possible to view the "subject of the mandamus litigation" more broadly to encompass the substantive question in the interlocutory appeal, *viz:* Does the district court have jurisdiction to enjoin Graham's execution temporarily unless the Board holds a clemency hearing? Simply because the Board's constitutional clemency powers are reiterated in the Code of Criminal Procedure, Article 48.01, V.A.C.C.P., it might be argued that "a criminal law is the subject of the litigation." *Smith v. Flack,* supra.[8] But an injunction is an equitable remedy. It is clear enough that the Texas Supreme Court does not consider the question whether a district court has jurisdiction to grant equitable relief even in what may fairly be described as a criminal law matter *itself* to be a criminal law matter. In the very recent case of *State v. Morales,* 869 S.W.2d 941 (Tex. 1994), the Supreme Court held that a district court did not have jurisdiction to issue a declaratory judgment that a penal code provision was unconstitutional, and to enjoin prosecution under that provision. The Supreme Court rendered this decision in a writ of error from an appeal to the Third Court of Appeals. But the appellate jurisdiction of the Supreme Court extends "to all cases except in criminal law matters." Article V, § 3, Texas Constitution. Because the Supreme Court does not have appellate jurisdiction over criminal law matters, it could not have considered the question of the district court's equity jurisdiction in *Morales* to have been a criminal law matter and nevertheless entertained a writ of error on that question.[9]

---

6. For example, the Declaratory Judgments Act does not confer jurisdiction upon a district court that does not already have some justiciable controversy before it. E.g., *Firemen's Ins. Co. of Newark, New Jersey v. Burch,* 442 S.W.2d 331 (Tex.1968). But this too is a question for the civil courts to decide. See discussion of *State v. Morales,* 869 S.W.2d 941 (Tex.1994), in text, *post.*

7. Relator Holmes also argues in the court of appeals that this Court has jurisdiction to decide the question whether the Board is exercising its clemency function in a constitutional manner, under Article 11.07, V.A.C.C.P.; and that because Section 3 of that provision makes habeas corpus returnable to this Court in a "procedure"

that is "exclusive," the district court had no jurisdiction over Graham's petition. See discussion of this question in the text, *post.* He does not explain why invoking this Court's post-conviction habeas corpus power to decide whether the Board is exercising its clemency function constitutionally would not likewise violate separation of powers.

8. But see this writer's concurring opinion in *Smith v. Flack,* supra, at 794–95.

9. Had the Supreme Court regarded the question of whether the district court had jurisdiction to grant equitable relief in *Morales* to have been a

Unless we are to hold that "criminal law matter" under Article V, § 5 means something different than the same language in Article V, § 3, we cannot now hold that the broader question whether Judge Lowry had equity jurisdiction in this cause is a criminal law matter without contradicting what the Supreme Court did in exercising its appellate jurisdiction in *Morales.*

### No Other Adequate Remedy at Law

In the long run, relators' remedy on appeal proves no less adequate than any we could give him in the exercise of our general mandamus authority. Either way, Graham cannot be executed until the decision is made whether Judge Lowry's Court has jurisdiction to determine the issues raised in his petition.

The underlying question whether the district court had jurisdiction to grant a temporary injunction can be decided in due time by the court of appeals.[10] Further review up the appellate ladder may or may not be permissible.[11] But that is not the subject of the mandamus litigation. The subject of the mandamus litigation is whether the court of appeals lacked authority to grant injunctive relief to preserve the subject matter of the interlocutory appeal. We know of no mechanism by which relators can take the question of the propriety of the court of appeals' injunction further up the appellate ladder in some interlocutory fashion for discretionary review. Thus, in a very real sense it appears relators have no adequate remedy at law.

Ultimately, however, for this court to grant mandamus relief in this matter proves no more efficacious to relators than waiting for the court of appeals to issue its opinion on the underlying issue of the district court's jurisdiction. This is so because the only thing that would make the court of appeals' injunction subject to our mandamus power is that the court of appeals lacked authority to grant it; and the only conceivable reason the court of appeals might have lacked authority is that Judge Lowry lacked jurisdiction over the cause in the first place.[12] That is in fact what relators contend here. See text, *post.* Until such time as we should resolve that question against Graham's interests, and order the court of appeals to dissolve the injunction, it will remain in place. Moreover, even if the injunction did not remain in place, this Court would surely issue a stay of execution, had it not done so already, in order to protect its own jurisdiction. Either way, Graham cannot be executed for as long as it takes for one forum or the other to decide whether Judge Lowry had jurisdiction over his purported lawsuit.[13] It behooves relators nothing to obtain mandamus relief in this Court that simply waiting for the decision of the court of appeals would not behoove them equally well.[14]

criminal law matter, it would have had jurisdiction only to dismiss the writ of error—just as this Court dismissed the State's petition for discretionary review in *Morales* for want of jurisdiction, presumably because it was not a "criminal case" for purposes of our appellate jurisdiction under Article V, § 5.

10. Thus, taking the broader view of "the subject of the mandamus litigation," *viz:* whether Judge Lowry's court had jurisdiction to decide if the Board's clemency proceedings are constitutionally adequate, there is a perfectly satisfactory remedy in the ordinary appellate process.

11. It appears that a writ of error "is not allowed" to the Texas Supreme Court on this question. V.T.C.A. Gov't Code, § 22.225(b)(4). Whether this Court could take the question on discretionary review depends upon whether, "criminal law matter" notwithstanding, it is a "criminal case" under Article V, § 5, Texas Constitution, defining our appellate jurisdiction.

12. I say "conceivable" advisedly. It would still seem, at any rate, that the court of appeals would have jurisdiction to decide whether Judge Lowry had jurisdiction, and authority to enjoin the execution in the meantime to protect the subject matter of the interlocutory appeal.

13. Even if this Court orders the court of appeals to remove its temporary injunction, and removes it own stay, it may be a while before Graham could be executed. Because the August 17 execution date has expired, a new execution date will have to be set "not less than thirty days from the day the court sets the execution date[.]" Article 43.14, V.A.C.C.P. In that time the court of appeals could well decide the merits of the accelerated interlocutory appeal.

14. It may be that relators are more hopeful of obtaining a palatable outcome in this Court. But the office of mandamus is not to supply a more favorable forum, but to supply any forum at all. Mandamus should not be used to dictate a partic-

### Ministerial Duty

Manifestly, the court of appeals' decision to grant injunctive relief to protect the subject matter of the litigation was judicial, not ministerial. While this Court may mandamus a lower court to perform some judicial function, it will not ordinarily mandamus the court to perform that function in a particular way or to some particular end. *State ex rel. Wade v. Mays*, 689 S.W.2d 893 (Tex.Cr.App. 1985); *State ex rel. Curry v. Gray*, 726 S.W.2d 125 (Tex.Cr.App.1987). If under the law and the facts, however, there is only one proper order that can be rendered, this Court will grant mandamus relief. *State ex rel. Vance v. Routt*, supra; *Garcia v. Dial*, 596 S.W.2d 524 (Tex.Cr.App.1980). The question here is whether dismissing its temporary injunction is the only proper course for the court of appeals to take under the circumstances.

Clearly the court of appeals has authority to grant "temporary orders as it finds necessary to preserve the rights of the parties until disposition of the appeal" under Rule 43(c), supra. See also Government Code, § 22.221(a), supra; 16 Tex.Jur.3rd Courts § 83, at 378–380 (1981). Relators do not really argue otherwise. They contend, instead, that any exercise of that authority to grant an injunction against executing Graham amounts to a stay of execution. That, relator Holmes argues, interferes with the jurisdiction of the 182nd District Court in Harris County, in which Graham was convict-

ed, the jurisdiction of this Court, which affirmed that conviction and issued its mandate, and the order of the 182nd District Court setting a date for execution pursuant to that mandate. The Board contends, moreover, that only this Court has authority to decide whether the Board must hold a hearing as a condition precedent to carrying out our mandate, by virtue of Article 11.07, § 3, V.A.C.C.P. Thus relators essentially urge that by enjoining Graham's execution the court of appeals has usurped the jurisdiction of the convicting court and of this Court.[15] I do not agree.

Once this Court's mandate has issued affirming a capital murder conviction, the convicting court has jurisdiction only to perform the essentially ministerial duties of pronouncing and imposing sentence and setting the execution date. In Graham's case these duties were carried out. Graham's lawsuit does not attack the validity of the convicting court's judgment and sentence, so there is no danger that Judge Lowry or the court of appeals will attempt to set those aside. It is true that the court of appeals' injunction postponed the execution scheduled for August 17. In so doing, the court of appeals impinged upon the convicting court's authority to set a specific execution date. Article 43.14, V.A.C.C.P. That amounts to nothing more, however, than a delay in carrying out the judgment and sentence, which is not itself under attack, but instead remains, in the interim, fully in effect.[16]

---

ular result. *Pope v. Ferguson*, 445 S.W.2d 950 (Tex.1969); *Ex parte Newman*, 14 Wall. 152, 81 U.S. 152, 20 L.Ed. 877 (1871).

**15.** Relators do not here reiterate the argument that Article II, § 1 of the Texas Constitution prevents the judiciary from intervening in the executive function of the Board. See p. 410 & n. 7, *ante*.

**16.** To the extent the court of appeals' injunction invades the convicting court's exclusive jurisdiction to set the specific execution date, Article 43.14, supra, that invasion is both *de minimis* and *sui generis*. It is *de minimis* because it does not in any way affect the validity of the judgment and sentence, or this Court's mandate. See text, immediately *ante* and *post*. It is *sui generis* in that it is not likely to arise again. There are two possible outcomes should Graham's lawsuit proceed. In either event, the decision there will end

any technical encroachment upon the jurisdiction of the convicting court. On the one hand, the civil courts may decide that Graham is entitled under due course of law to a clemency hearing before the Board. In that event, the Board will provide such a hearing both to Graham and to subsequent, similarly situated death row inmates. On the other hand, the courts may decide no hearing is required. Graham's execution will be re-set and subsequently carried out. Future convicted capital murderers raising the same claim will be denied injunctive relief under the doctrine of *stare decisis*. Should some recalcitrant district court enjoin a future execution date in spite of *stare decisis*, then it might be appropriate for this Court to intervene in the protection of our appellate mandate. See, e.g., *State ex rel. Looney v. Hamblen*, 74 Tex.Cr.R. 526, 169 S.W. 678 (1914). Because any technical invasion on the convicting court's authority to set an execution date is, thus, both *de minimis* and

If Graham's lawsuit is allowed to proceed, there are any number of possible scenarios that can play out. None interferes with the convicting court's judgment and sentence, or our mandate thereon. First, the court of appeals could decide Judge Lowry has no jurisdiction to entertain Graham's lawsuit at all, and hold that his temporary injunction was invalid. Assuming that decision is not overturned on discretionary review or writ of error,[17] the trial court is free to set a new execution date. Second, the court of appeals could hold that Lowry's injunction was valid, and trial on the merits could commence in the district court. Judge Lowry might then rule that due course of law does not require the Board to conduct a clemency hearing.[18] Assuming that ruling were to survive the appellate process, again, the convicting court could set a new execution date. A third scenario follows from a final ruling at any level, trial or appellate, that due course of law does in fact require the Board to hold a hearing. The trial court can then set a new execution date, and as long as the Board holds a hearing prior to that date, any decision not to recommend that the Governor grant clemency in spite of whatever evidence Graham may present will result in his execution at the appointed time. Only in the event that the Board responds to Graham's newly discovered evidence by recommending a pardon or commutation of sentence will the judgment and sentence of death become a nullity. But executive clemency always interferes with the judgment of the judiciary— that is the constitutional prerogative of the executive branch! Article IV, § 11, Texas Constitution. In short, nothing that can come of the lawsuit filed in Judge Lowry's court will interfere with the ultimate execution of the convicting court's judgment and sentence, or this Court's mandate, except insofar as the executive branch may lawfully intervene.

Relators rely heavily upon our opinion in *State ex rel. Wilson v. Briggs*, 171 Tex.Cr.R.

479, 351 S.W.2d 892 (1961), for the proposition that the district court lacked jurisdiction to enter any order adversely affecting this Court's appellate mandate. I think *Wilson* is distinguishable, however. In *Wilson* this Court issued a writ of prohibition to protect, not its appellate jurisdiction, but its original jurisdiction "in habeas corpus cases." *Id.*, 351 S.W.2d at 894. A state district court judge, Briggs, granted an eleventh hour stay of execution for a convicted capital murderer, Stickney, and issued a writ of habeas corpus returnable to this Court under former Article 119, C.C.P. (1925), now Article 11.07, supra. This Court denied relief, and lifted the stay. A new execution date was set. At the eleventh hour before the rescheduled execution, Briggs granted another stay, and set a hearing in his courtroom. The Attorney General and the Harris County District Attorney petitioned this Court to issue a writ of prohibition against Judge Briggs to prevent him from interfering further with Stickney's execution. The Court granted the requested relief "in order to enforce the jurisdiction of this Court[.]" *Id.*, at 896. That holding is premised, however, on the fact that all three grounds upon which Judge Briggs based his final stay of execution had already been raised and rejected by this Court in previous post-conviction habeas corpus proceedings. *Id.*, at 895. In effect, we were acting to protect judgments already rendered in our original habeas corpus jurisdiction from the machinations of a district court judge who felt that we should reconsider them. We were not protecting our appellate jurisdiction. Here, of course, we have rendered no decision, by habeas corpus or otherwise, respecting the question pending in Graham's lawsuit, *viz:* whether the Board must hold a clemency hearing. Unlike the case in *Wilson*, supra, here there is no judgment of this Court in a post-conviction matter for us to protect. Moreover, as I have shown *ante*, any encroachment upon our *appellate* mandate is, at best, inconsequential. *De minimis non curat lex.*

---

*sui generis*, the Court should exercise its discretion to deny mandamus relief.

**17.** That is, if either discretionary review or writ of error is even available. See n. 11, *ante*.

**18.** In fairness, this appears an unlikely result, in view of the fact that on August 3, 1993, Judge Lowry sent a letter to the parties indicating that he believes Graham is entitled to a clemency hearing.

Relators argue, however, that only this Court can decide if the Board must hold a clemency hearing. Section 2 of Article 11.07 makes all post-conviction writs of habeas corpus returnable to this court; section 3 makes the remedy here an exclusive one. In order to protect the exclusiveness of that remedy, relators maintain, we should prevent the civil side from exercising jurisdiction over the question by issuing the writ of mandamus, on authority of *Wilson*.[19] This is in effect an argument that we should invoke our mandamus power to protect our own jurisdiction, rather than our general mandamus power. I turn to that question next.

### Protecting our Jurisdiction

Section 2 of Article 11.07 provides that "[a]fter final conviction in any felony case, the writ must be made returnable to the Court of Criminal Appeals of Texas...." Section 3 reads, "[a]fter conviction the procedure outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner." Because Graham's conviction is final, relators argue, any remedy to which he is entitled must emanate from this Court by way of post-conviction writ of habeas corpus.

Graham's lawsuit in Judge Lowry's court does not, however, attack the validity of his capital murder conviction. Should he prevail, Graham will be neither released from confinement, nor absolved of the death penalty. The judgment and sentence against him

in his criminal case will not be affected in any way.[20] A declaratory judgment in Graham's favor would only compel the Board to hold a clemency hearing. It would not dictate a particular outcome to that hearing—indeed, it could not, consonant with principles of separation of powers under Article II, § 1, supra. Only if the Board should exercise its discretion, following such a hearing, to recommend clemency, would there be an invasion of our appellate jurisdiction. And that is a legitimate executive invasion.

For many years we held that habeas corpus is not available to secure a judicial determination of a question that, even if determined in the prisoner's favor, could not result in his immediate discharge. E.g., *Ex parte Ruby*, 403 S.W.2d 129 (Tex.Cr.App. 1966). A judicial determination that Graham is entitled to a clemency hearing before the Board would not result in his discharge. Therefore, consistent with the holding of cases such as *Ruby*, habeas corpus would not lie, either under Article 11.07 or otherwise. In short, Article 11.07 would not be an available remedy at all, much less the "exclusive ... proceeding ... in discharging the prisoner."[21]

In recent decades we have retreated from the position that a habeas applicant must seek immediate release or discharge in order for the writ to lie. In *Ex parte Alegria*, 464 S.W.2d 868 (Tex.Cr.App.1971), we allowed an inmate to challenge the ex post facto applica-

---

**19.** It is interesting to note that in *Wilson* itself, the Court did not rely on the language of exclusiveness in former Article 119, supra, now Article 11.07, § 3, supra, as the reason we were compelled to step in to protect our habeas corpus jurisdiction. In *Wilson* we had already exercised our habeas corpus jurisdiction, and exercised our mandamus power to protect our judgments already rendered on habeas corpus.

**20.** Indeed, he does not claim his capital murder conviction is even voidable, much less void. See *Ex parte Truong*, 770 S.W.2d 810 (Tex.Cr.App. 1989).

**21.** This question of whether a habeas corpus applicant is raising a claim that, if decided in his favor, will result in his discharge should not be confused with the question of "mootness"— whether post-conviction habeas corpus is available to assail a final felony conviction for which the applicant is no longer confined. We have

held that an applicant may attack the validity of a former final felony conviction under Article 11.07, supra, even if he is not currently confined as a result of that conviction, so long as he is in fact "confined" on some other offense and the former conviction may have collateral adverse consequences. See *Ex parte Renier*, 734 S.W.2d 349 (Tex.Cr.App.1987). If he is not confined, he may still pursue the writ of habeas corpus, but it will not be returnable to this Court under Article 11.07, supra. *Id.* But whether currently confined or not, the applicant is attacking the validity of a final conviction, from which, if he is correct, he will be discharged. In his suit in Judge Lowry's court, Graham does not seek a discharge from his conviction. Were Graham to apply to this Court for a post-conviction writ of habeas corpus to order the Board to hold a clemency hearing, he would not be seeking a discharge from his conviction here either.

tion of a statute postponing parole eligibility in a post-conviction habeas corpus proceeding. We did so even though we acknowledged that Alegria was not seeking "outright release or discharge" and that the decision whether to actually parole an inmate is for the executive branch to make. *Id.*, at 871 & 875. For the proposition that actual discharge is no longer a prerequisite to habeas corpus cognizability, we relied uncritically (as we have been wont to do, see *Ex parte Crispen*, 777 S.W.2d 103, at 106–110 (Tex.Cr. App.1989) (Clinton, J., concurring)) upon the federal habeas corpus analog. *Id.*, at 871, citing *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); see also *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[22] In many cases since *Alegria* we have entertained challenges under Article 11.07 to the constitutionality of statutes and regulations adversely impacting parole eligibility, even though the ultimate discretion whether to discharge an eligible inmate on parole remains with the Board. E.g., *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr.App.1987); *Ex parte Rutledge*, 741 S.W.2d 460 (Tex.Cr.App.1987); *Ex parte Choice*, 828 S.W.2d 5 (Tex.Cr.App.1992).[23]

Simply because we have extended our post-conviction habeas corpus jurisdiction to reach matters that do not involve "discharging the prisoner" does not mean, however, that the exclusiveness of the proceeding under Article 11.07, § 3, is likewise extended. The relevant language of Section 3 was contained in the predecessor to Article 11.07, see Art. 119, supra, when it was originally promulgated in 1943. See Acts 1943, 48th Leg., ch. 233, § 1, p. 355, eff. May 6, 1943. At that time the writ of habeas corpus was *only* available for the purpose of "discharging the prisoner." Section 3 of Article 11.07 was meant to make habeas corpus returnable to this Court the "exclusive ... proceeding ... in discharging the prisoner" once he had been finally convicted for a felony offense. The Legislature could not have contemplated in 1943 that Article 11.07 should be the exclusive proceeding for accomplishing any other objective than "discharging the prisoner" following final conviction, since at that time no other objective was obtainable *at all* by habeas corpus, whether returnable in this Court or not.[24] For this reason, if no other, I take

---

**22.** In *Alegria*, the Court wrote:

"At the outset it may well be questioned whether this court possesses jurisdiction to dispose of the question raised by virtue of the habeas corpus writ as petitioner does not seek outright release or discharge but only a determination of his eligibility for parole. Under former holdings of this court, i.e., *Ex parte Rios*, Tex.Cr.App., 385 S.W.2d 677, whose underpinning was *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, a serious question might well be presented. However, the doctrine of *McNally v. Hill*, supra, was laid to rest with proper respect by the decision of *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426."

See also *Ex parte Easley*, 490 S.W.2d 570 (Tex. Cr.App.1972); *Ex parte Weaver*, 537 S.W.2d 252 (Tex.Cr.App.1976). In *Ex parte Rios*, supra, this Court had relied on *McNally* merely as persuasive authority for the proposition that habeas corpus will lie only to determine questions germane to the lawfulness of the custody of the applicant. Subsequently, in *Peyton*, the United States Supreme Court held that a claim for immediate discharge was no longer a prerequisite to habeas corpus relief pursuant to 28 U.S.C. § 2241(c)(3), overruling its earlier decision in *McNally*. When it comes to state habeas corpus jurisprudence, however, *Peyton* was no more binding authority on this Court than *McNally*

had been. See *Ex parte Crispen*, supra (Clinton, J., concurring). Before expanding the reach of post-conviction habeas corpus so substantially in *Alegria*, it would have been well for the Court to examine the opinion in *Peyton* critically to determine whether it should be followed in Texas.

**23.** The Court has also ordered the Board to hold particular kinds of hearings in the past, under Article 11.07, supra. See *Ex parte Maceyra*, 690 S.W.2d 572 (Tex.Cr.App.1985); *Ex parte Glenn*, 690 S.W.2d 578 (Tex.Cr.App.1985); *Ex parte Johnson*, 690 S.W.2d 585 (Tex.Cr.App.1985); *Ex parte Williams*, 738 S.W.2d 257 (Tex.Cr.App. 1987); *Ex parte Martinez*, 742 S.W.2d 289 (Tex. Cr.App.1987). In all of these cases the Court held, first for statutory, and later for constitutional reasons, that the Board cannot administratively revoke parole on the basis of nothing more than evidence of a subsequent conviction. Instead, the Board must hold a hearing to allow ventilation of reasons it might choose to exercise its discretion not to revoke parole in spite of the subsequent conviction. In each case, however, the applicant was discharged from actual custody of the Department of Corrections, at least to the extent that his custody stemmed from the revocation of his parole rather than his subsequent conviction.

**24.** This is not to say that the Court did not entertain claims under former Art. 119 that an

Section 3 to mean literally what it says, and no more: Article 11.07 is the exclusive proceeding, after a final felony conviction, for *discharging the prisoner.* See also *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App. 1991).

In his lawsuit in Judge Lowry's court, Graham does not seek a discharge from his confinement or sentence of death. To the extent that Article 11.07 may be an available avenue by which he might obtain a ruling whether the Board must grant him a clemency hearing, he would not, in that context, be seeking a discharge either. It follows that Article 11.07 is not an exclusive proceeding for litigating that question, Section 3 notwithstanding.[25]

Therefore, to the extent it stands for the proposition that we have mandamus authority to protect our judgments in post-conviction habeas corpus, *State ex rel. Wilson v. Briggs,* supra, is inapposite here. We have no habeas corpus judgment, nor any exclusive habeas corpus jurisdiction in this matter to protect. Accordingly, we have no call to invoke our mandamus authority against the court of appeals to protect our jurisdiction.

## III.

### Advisory Opinions

The Board urges us to treat its application for writ of mandamus and prohibition as a habeas corpus proceeding, and to hold that it does not have to afford Graham a clemency hearing. However, the Court has no application for writ of habeas corpus before it. Although district and county courts are authorized to issue a writ of habeas corpus *sua sponte,* see Article 11.16, V.A.C.C.P., there is no like provision authorizing *sua sponte* issu-

ance by this Court. Nor should we treat the Board's application for mandamus and prohibition relief against the court of appeals as a veiled application for writ of habeas corpus on Graham's behalf. Even if we were to view the Board as a "person" who may present the application of an "applicant" "for him," the Board is hardly "present[ing] a petition" in Graham's behalf "for the purpose of obtaining relief." Articles 11.12 & 11.13, V.A.C.C.P. For these reasons we should decline relators' invitation to reach the questions raised in Graham's lawsuit on habeas corpus.

Nevertheless, the majority does purport to decide that habeas corpus would lie, under Article 11.07, supra. Strangely, the majority does not decide that the question whether the Board must hold a hearing is cognizable under Article 11.07, supra; instead, it decides that the question whether Graham is actually innocent is. But by the time the majority reaches this question, it has already concluded that mandamus and prohibition relief will be granted. Thus, the conclusion that Graham can raise a claim of actual innocence in a habeas corpus proceeding in this Court is wholly unnecessary to disposition of the applications for writ of mandamus and prohibition. In this respect, the majority opinion is baldly, unabashedly advisory. This Court has no power to issue advisory opinions. See, e.g., *Garrett v. State,* 749 S.W.2d 784, at 803 (Tex.Cr.App.1988) (Plurality opinion on State's motion for rehearing); *Ex parte Ruiz,* 750 S.W.2d 217, at 218 (Tex.Cr.App. 1988); *Sims v. State,* 792 S.W.2d 81, at 82 (Tex.Cr.App.1990); *Armstrong v. State,* 805 S.W.2d 791, at 794 (Tex.Cr.App.1991).[26]

---

inmate, e.g., had been denied good time credits. We entertained those claims pursuant to a statutory scheme, however, by which good time credits operated to earn the inmate actual commutation of his sentence, and granted habeas relief only if, given the good time allegedly deprived the inmate, he would be entitled to be discharged from the penitentiary. E.g., *Ex parte Anderson,* 149 Tex.Cr.R. 139, 192 S.W.2d 280 (1946); *Ex parte Baird,* 154 Tex.Cr.R. 508, 228 S.W.2d 511 (1950).

25. Graham seeks neither "immediate" nor a "speedier" discharge from the judgment and sentence against him. His lawsuit does not attack "the fact or duration of his confinement."

Therefore, not even the federal analog suggests that habeas corpus should be the exclusive remedy. *Preiser v. Rodriguez,* supra, 411 U.S. at 500, 93 S.Ct. at 1841, 36 L.Ed.2d at 456. See also *Gerstein v. Pugh,* 420 U.S. 103, at 107, n. 6, 95 S.Ct. 854, at 859, n. 6, 43 L.Ed.2d 54, at 61, n. 6 (1975).

26. The majority decides that a claim of actual innocence is cognizable in an application for post-conviction habeas corpus under Article 11.07, supra, because it raises a claim under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. It should be noted that in his suit for declaratory judgment relief in Judge Lowry's court, Graham

Moreover, although the majority has ordered the court of appeals to lift its injunction, that court is apparently otherwise free to proceed with relators' interlocutory appeal. See n. 13, *ante*. It seems odd for the majority to allow that lawsuit to proceed while suggesting that Graham should raise another claim in another forum.

Because the Court's opinion is advisory, I refrain from advancing any full-blown opinion on the merits of the question whether habeas corpus would lie for Graham's claim of actual innocence, if any. However, I am disturbed that the majority's apparent regard for *stare decisis* is so slight that it would reach out to upset, to whatever "extent" it is inconsistent with its advisory opinion (I cannot tell), a holding as well established as *Ex parte Binder*, 660 S.W.2d 103 (Tex.Cr.App.1983). Op. at 414.

### Impossible Burdens

I am compelled to add one more observation about the advisory portion of the majority's opinion. In setting the standard that a putative habeas applicant would have to meet to show actual innocence under the Fourteenth Amendment, the majority has given with one hand and taken away with the other. Graham can make out a cognizable claim of actual innocence, says the majority, if he can show that, considering the evidence admitted at trial together with the newly discovered evidence, no rational jury could find guilt beyond a reasonable doubt. Thus, as per Justice White's suggestion, the majority imports a *Jackson v. Virginia* sufficiency of the evidence standard into the actual innocence calculus.[27] This is an impossibly high standard of proof. By that I do not mean that as a practical matter precious few applicants will be able to produce new evidence sufficiently compelling to meet the majority's test. By that I mean that it will be impossible *by definition* for any applicant to meet

the test, regardless of how compelling his newly discovered evidence.

This is so because any evidence sufficient to support a jury's verdict beyond a reasonable doubt at trial will also be sufficient to support a rational jury's guilty verdict even after adding the most compelling newly discovered evidence to the mix. In *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991), the Court jettisoned the "reasonable alternative hypothesis" understanding of the *Jackson v. Virginia* test for sufficiency of the evidence under the Fourteenth Amendment, an understanding that we had previously embraced in *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr. App.1983). Assuming that evidence adduced at trial was sufficient to support a rational jury finding of guilt, all that newly discovered evidence could do is either 1) conflict with that evidence, in which case the jury's verdict of guilt remains rational, since we presume it resolved all conflicts in the light most favorable to the verdict; or, 2) create a reasonable alternative hypothesis, that is, an inference of innocence that is as consistent with all the evidence, trial-adduced as well as newly discovered, as is the inference of guilt. Under *Carlsen*, supra, given this second scenario, we would have declared the evidence insufficient. See also *Girard v. State*, 631 S.W.2d 162 (Tex.Cr.App.1982). Presumably, applying that standard to the habeas applicant who claims newly discovered evidence that shows his actual innocence, a colorable claim could be made, and applicant might even prevail.

But under *Geesa*, supra, as long as there is a rational inference of guilt to be derived from all the evidence, it does not matter whether there is also an equally consistent inference of innocence; the evidence will be declared sufficient. In essence, we have rejected the notion of *Carlsen* that as long as there is an inference of innocence that is consistent with all the evidence, no rational

studiously avoided any reliance whatsoever on the federal constitution. Thus, the majority not only manufactures an issue not raised in the civil lawsuit, it resolves that manufactured issue according to authority not invoked in that lawsuit. I suspect the Court must base its advisory holding on the Fourteenth Amendment in order to avoid the obstacle that a claim that a conviction

is flawed under the Texas Constitution is not cognizable in habeas corpus under Article 11.07 unless the defect renders the conviction void. See *Ex parte Truong*, 770 S.W.2d 810 (Tex.Cr. App.1989).

27. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

trier of fact can accept an equally consistent inference of guilt beyond a reasonable doubt. Absent that possibility in our understanding of the *Jackson v. Virginia* sufficiency standard, it sets up an insurmountable obstacle when applied to the habeas applicant trying to establish a claim of actual innocence under the Fourteenth Amendment. He simply will not be able to show actual innocence, because no amount of newly discovered evidence will overcome the rationality of the jury's verdict of guilt based upon the evidence that was adduced at trial.

I am at a loss to understand why the majority would go to the trouble of, and risk censure for, devising such an elaborate advisory opinion, recognizing cognizability of a claim of actual innocence in post-conviction habeas corpus, and then announcing a burden that ensures that no applicant can ever obtain relief on the basis of that new claim. I cannot help but come away with an abiding impression that the majority's objective in this whole matter has been to wrest control of Graham's destiny from the courts of equity, and the executive branch, and to ensure that when he finally appears before this Court, he cannot prevail. In my view, the Court is entirely too jealous of its turf.

### IV.

The Court errs to grant mandamus and prohibition relief in this cause. It compounds that error by issuing an advisory opinion on the availability of habeas corpus relief in the absence of any application from Graham. For these reasons I respectfully dissent.

MEYERS, J., joins.

MEYERS, Judge, dissenting.

Unfortunately, a great deal of the confusion and controversy surrounding this case arises because the ultimate judicial authority in our State is shared by this Court and the Texas Supreme Court. Our Constitution provides that the Supreme Court's "appellate jurisdiction shall be final and shall extend to all cases except in criminal law matters ..." Tex. Const. art. V, § 3. This Court, on the other hand, has "final appellate jurisdiction

... in all criminal cases of whatever grade ..." Tex. Const. art. V, § 5. Ideally, it would be desirable to interpret these two provisions as mutually exclusive, such that every appealable case or controversy falls within the final appellate jurisdiction either of the Supreme Court or of the Court of Criminal Appeals, but never of both. Such an interpretation is only possible, however, if the key phrases "criminal law matters" and "criminal cases" are construed to mean exactly the same thing. Otherwise, it necessarily follows that the Supreme Court and the Court of Criminal Appeals have concurrent appellate jurisdiction in some cases, that neither court has appellate jurisdiction in other cases, or that both jurisdictional conditions are true.

If it were clear that the questions raised by Gary Graham's suit for declaratory judgment in the 299th District Court of Travis County would ultimately reach this Court on appeal, and not the Texas Supreme Court, we would not entertain the instant cause of action. Under such circumstances, it seems unlikely any judge on this Court would take the view that our prior judgment affirming Graham's conviction for capital murder, or the mandate making it final, was in danger of compromise. We would undoubtedly be content to let the normal appellate process run its course, confident that such course would ultimately lead to us, and to us alone.

But a majority of the judges on this Court are not confident that the issues raised by Graham's lawsuit, including the interlocutory controversy now pending before the Third Court of Appeals, will reach this Court by direct appellate review. Consequently, they are willing to interrupt the normal appellate process with an extraordinary writ, commanding the lower courts to relinquish jurisdiction of these matters, precisely in order to prevent the usual appellate process from leading eventually to the Texas Supreme Court or from terminating in the Third Court of Appeals. While I too am concerned that this State's bifurcated judicial process could sometimes generate conflicting decisions at the highest level on identical questions of law, I am not willing to torture our mandamus and habeas corpus jurisprudence in or-

der to fight a turf war with other Texas courts.

If there is a problem, it lies with the lines dividing the constitutional jurisdiction of this Court and the Texas Supreme Court. It certainly does not involve, at least not at present, questions of trial court or intermediate appellate court jurisdiction. Thus, it is clear that the 299th District Court did in fact have jurisdiction of Graham's lawsuit in the ordinary sense, since the Texas Constitution has plainly conferred upon the district courts "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies," except as otherwise expressly provided by law. Tex. Const. art. V, § 8. And there is no question but that such jurisdiction extends both to civil and to criminal cases, as well as to matters involving both the civil and the criminal law.

Likewise, the Third Court of Appeals certainly has jurisdiction to determine questions arising from appealable orders and judgments, both final and interlocutory, of the 299th District Court in connection with Graham's lawsuit, since the Texas Constitution unambiguously provides that the "Courts of Appeals shall have appellate jurisdiction ... which shall extend to all cases of which the District Courts ... have original or appellate jurisdiction[.]" Tex. Const. art. V, § 6. This jurisdiction undoubtedly embraces civil and criminal cases alike, extending as well to questions of criminal as to civil law.

Accordingly, whether the controversy between Graham and the Parole Board is a civil or a criminal case within the meaning of the Texas Constitution is irrelevant to the jurisdiction of the lower courts in which it is pending. The only consequence of significance which follows from a determination that the case is criminal or that it involves matters of the criminal law has to do with the jurisdiction of this Court and of the Supreme Court. If, for example, the controversy involves "criminal law matters," as a majority of this Court has held, such that it is a proper subject for the exercise of our mandamus jurisdiction under article V, section 5 of the Texas Constitution, then we would necessarily also conclude that neither party may appeal an adverse decision of the Third Court of Appeals to the Texas Supreme Court, since the latter does not have appellate jurisdiction of cases involving "criminal law matters." Tex. Const. art. V, § 3. Because this Court has jurisdiction to "review a decision of a Court of Appeals in a criminal case as provided by law," Tex. Const. art. V, § 5, the only remaining question affecting the possibility of further appellate review is whether Graham's lawsuit should be considered a "criminal case" for purposes of constitutional interpretation.

Meanwhile, the entire controversy with which we are here concerned is whether the lower courts may legitimately maintain a state of equilibrium between the parties while they litigate their differences. It strikes me as witless for this Court to prevent such an agreeable result, using its extraordinary powers as a pretext to bring about essentially the same outcome itself. The cruel truth is that this case has little to do with the adequacy of our State's usual appellate process effectively to vindicate the interests at stake in Graham's litigation. Indeed, the Court barely disguises its real motive, holding that an appellate remedy is too "tedious, slow, inconvenient, inappropriate or ineffective" for this case because it "would necessarily require relators to wait until final judgment is entered, and the appeals process would likely be through the civil courts." Op. at 394.

This rationale is an open affectation, lacking even the appearance of legitimacy. Waiting for final judgment is not an unusual or extreme burden on litigants in our system of adjudication. Rather, it is the typical prerequisite to appellate review, common to virtually all cases, both civil and criminal. If the need for finality were to be considered a sound basis for the exercise of our extraordinary writ jurisdiction in general, then the appellate process as a whole would exist only at the pleasure of this Court.

Moreover, the possibility that Graham's case might pass its entire appellate lifespan in "the civil courts" is an equally transparent bit of fiction. In the first place, the Third Court of Appeals is not a civil court. As already noted, its jurisdiction extends both to civil and to criminal cases. Thus, the only

"civil court" to which an appeal of Graham's case might finally come is the Supreme Court of Texas. Yet, because a majority of this Court seems convinced that the case involves criminal law matters, it conversely must be convinced that the Supreme Court lacks jurisdiction of it. Accordingly, the majority's own process of reasoning makes it clear that Graham's case must either come to this Court eventually or expire in the Third Court of Appeals. Why this circumstance should render the appellate process itself inadequate is not evident from the Court's opinion, but it would appear that the majority simply will not tolerate the possibility, however remote, that the Texas Supreme Court might somehow acquire jurisdiction of these matters.

I am far less concerned, however, about that possibility than I am about this Court rampaging through the civil and criminal jurisprudence of Texas. For no better reason than that Graham was adjudged guilty of capital murder and sentenced to death, and that the judgment against him was affirmed on appeal, this Court holds that the Court of Appeals may not enjoin his execution pending disposition of a lawsuit which might result in his pardon, because it would "circumvent our judgment and disobey our mandate." Op. at 395. In my view, this attitude is not only misguided as a matter of law, but indefensibly chauvenistic as well.

The judgment of this Court is not an order that Gary Graham be executed. It is merely a declaration that no error in his trial has yet been brought to our attention which would require the judgment of conviction or sentence of death against him to be set aside. Consequently, the order of another court that Graham's execution be postponed until it can be determined whether the Board of Pardons and Paroles must hold an evidentiary hearing on his request for executive clemency does not interfere at all, let alone disobey, this Court's mandate. Neither our judgment affirming Graham's conviction nor the mandate making it final are under attack, either in the 299th District Court or in the Third Court of Appeals. Even if Graham prevails on his lawsuit in these courts, the judgment will not purport to unconvict him of capital murder. It will merely adjust his legal relationship with the executive branch of our government.

In the end, what is most subversive about this Court's decision to terminate Graham's lawsuit is that it disrespects the legal process. All of the courts immediately affected by our writ of mandamus in this case have thus far comported themselves in a manner entirely consistent with their constitutional jurisdiction and statutory authority. There is simply no reason to believe that they would do otherwise if the normal process of adjudication and appeal were allowed to run its course, free of hysterical interference from this Court. Additionally, there is not the slightest defensible reason to suppose that such process would produce orders or judgments which conflict with the judgment of conviction against Gary Graham, that any erroneous orders or judgments would not be corrected by further discretionary review, or that such further direct review would not be fully adequate to protect the interests of the State of Texas.

To make matters even worse, this Court further concludes that Graham's claim of innocence is really a proper subject for the exercise of our habeas corpus jurisdiction, even though it is perfectly clear that the relief sought by Graham, an evidentiary hearing before the Board of Pardons and Paroles and an act of clemency from the Governor, cannot be granted by this Court at all. Habeas corpus is a constitutional and legislative remedy to free persons from unlawful restraint. As contemplated by article 11.07, section 2 of our Code of Criminal Procedure, it is a writ to discharge prisoners who are illegally confined on account of final felony convictions. In his lawsuit, Graham does not allege that either one of these circumstances is true, and no one has yet filed an application on his behalf which contends that his conviction is invalid or his confinement illegal.

It may very well be the case that Graham's claim of actual innocence is eventually recognized by this Court as a basis for setting aside his conviction and sentence of death, although we have recently been disinclined to entertain such claims from similarly situated

death row inmates. It may well be that we someday take cognizance of Graham's actual innocence claim in a habeas corpus proceeding, although some of our existing case law must be overruled or significantly qualified in order to do so. It may also be that we decide to make the fundamental changes in our habeas jurisprudence which are necessary to achieve these ends. But such issues have nothing to do with whether Graham is entitled to an evidentiary hearing before the Board of Pardons and Paroles, and it would be a cruel irony indeed if he were prevented from litigating the issue of his entitlement to a clemency hearing just because this Court believes that the validity of his conviction should be litigated instead. In fact there is nothing in the logic of our jurisprudence to prevent both actions proceeding at once.

This case is so far from being a just or prudent exercise of our power to issue extraordinary writs that it slanders the wisdom of those Texans who voted to confer it upon us little more than a decade ago. Today, we have unilaterally defined a boundary marking the limit, not only of its own jurisdiction, but of the Supreme Court's as well. We have construed article V, section 5 of the Texas Constitution, and by necessary implication article V, section 3 also. We have done this absent any consultation with our brethren on the Supreme Court and apparently without regard to the impact it may have on their jurisdiction. Our entire manner has had the appearance of a guerilla raid, when it should instead have been a cooperative effort to construe fundamental aspects of Texas constitutional law. In the process, we have violated basic principles of our own mandamus jurisprudence, encouraged the misuse of habeas corpus, and shamelessly interrupted an appellate process which was running exactly as prescribed by law, and which might very well have produced results better than expected by the majority had it been permitted to proceed to final judgment.

I dissent.

CLINTON and MILLER, JJ., join.